[Crim. No. 2452.  First Dist., Div. Two.  Feb. 25, 1948.]

THE PEOPLE, Respondent, v. INEZ L. BURNS et al.,
Appellants.

Walter McGovern and John R. Golden for Appellants.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, Edmund G. Brown, District Attorney, and Thomas C. Lynch, Assistant District Attorney, for Respondent.

GOODELL, J.—The appellants were accused by information of conspiracy to commit abortions (Pen. Code, §§ 182, 274) and of practicing medicine without a certificate (Bus. & Prof. Code, § 2141). There were two trials, each resulting in a disagreement of the jury. The third trial resulted in a verdict of guilty as to all five defendants on both charges, and from the judgment entered thereon this appeal was taken.

At the opening of their brief appellants "elect to rely solely, in this appeal, on their contention that the trial court deprived them of their constitutional rights not to be placed in jeopardy twice for the same offense." That being so, a statement of the evidence is not necessary. It will suffice to relate the circumstances out of which double jeopardy is claimed to have arisen, as follows:

The trial opened on September 17th, 1946, and that day and the 18th and part of the morning of the 19th, were taken up in the selection of a jury. At approximately 11 o'clock on the 19th a jury of 12 persons, including Thomas J. Furner, had been selected and sworn to try the case. The court then gave the usual admonition on separation and

told the jurors that they were to be in the custody of the sheriff during the trial. The record then shows the following:

"Mr. Lynch. Does your Honor intend to select any alternate jurors? The Court: Yes, I believe we should select two alternates. The Clerk: There is only one juror left in the box. The Court: You will send for other jurors and we will take that up after the recess." A recess was then taken.

At the opening of the afternoon session, the judge ordered: "Mr. Clerk, in accordance with the provisions of section 1089 of the Penal Code, you will make an entry in the minutes that the court in its discretion will require the selection of two alternate jurors, and in accordance with customary procedure you will draw the names." To this the defense objected on the ground that "there has been no showing of necessity for that." Several prospective alternates were examined on their *voir dire* and after one had been seated the court remarked that one alternate would be sufficient, to which counsel for the defense responded "All right, that is our stipulation."

The judge then called counsel into chambers and stated that after the jury had been impaneled and sworn his attention had been called to the fact that juror Furner stood accused by an information then pending in the same department of the court, of a violation of section 480 of the Vehicle Code (hit and run) which fact neither he nor any of the counsel in the pending case had known at the time of Furner's *voir dire* examination. The judge stated that in his judgment this juror should not serve; that he purposed calling him in, and if he did not ask to be excused the court would, in the exercise of its discretion, excuse him for cause and put the alternate in his place.

The defense objected, stating that a jury had been duly and regularly sworn to try the case; that the contemplated action could not be carried out legally; that the fact that Furner had been accused was not a ground for challenge for cause, and that if carried out the proposed action would result in a denial of the defendants' constitutional rights respecting double jeopardy. The defense stated, further, that if Furner were brought into chambers and questioned it would be intimidating the juror and would "possibly scare him into asking to be excused"; that the substitution of another juror would be denying the defendants their right

to be tried by a jury of their own selection. The district attorney, when invited to comment, said nothing.

The juror was then called in and stated, in reply to the judge's question, that he was the same Thomas J. Furner against whom such information had been filed. The following transpired: "The Court: . . . Do you feel, Mr. Furner, under the circumstances, that you would care to be excused? Juror Furner: It is entirely up to yourself, your Honor. I want to be fair about it. In fact, I discussed this with my attorney and he said as long as I wasn't objected to and as long as I answered the questions truthfully, I could.

"The Court: Well, of course, there is no reflection upon you whatsoever. I want you to understand that. It was not called to the attention of the court, nor was it called to the attention of the attorneys. None of us knew anything about it. And, of course, you are presumed to be innocent on that charge. But in view of the fact that you have been informed against by the district attorney and that that charge is now pending in this very department, the thought has occurred to me that you might possibly wish to be excused. I will ask you again then if you wish to be discharged under those circumstances?

"Juror Furner: Well, if you think it is liable to cast reflection on anyone, it is perfectly all right with me if you wish to excuse me.

"Mr. McGovern: I am going to object, your Honor, on all of the grounds heretofore interposed.

"The Court: The record will show that, and the record will show that the court in its discretion will excuse you, Mr. Furner. And you are to understand that there is no reflection upon you in that decision of mine. It is merely that I do not feel, in view of the fact that you have been informed against by the district attorney, who is also prosecuting this case, that it would be fair to you or fair to anyone concerned to have you serve upon this case, and therefore you are discharged.

"Juror Furner: All right, sir.

"The Court: And the record will show for the cause heretofore stated by the court.

"Mr. McGovern: To which we take an exception."

On returning to the courtroom the juror was formally excused and the alternate juror, named Lawrence A. Bailey, was sworn and seated in Furner's place.

Counsel then returned with the judge to chambers and the defense moved that all five defendants be forthwith dismissed from all pending charges on the ground that the court had indicated it intended to try them by a jury other than that which was theretofore selected, constituting double jeopardy. The motion was denied. They indicated also that a formal plea of former jeopardy would be entered later. In denying the motion to dismiss, the judge stated that in his opinion "no constitutional guarantee, either state or federal, has been violated as far as each defendant is concerned; no witness has been sworn, and the court in the exercise of its discretion, does not believe it proper to proceed with a jury of 12 people, one of whom is presently charged with the commission of a felony by the prosecutor and by the same attorneys who are conducting the prosecution in the instant case. An alternate juror has been chosen in accordance with the provisions of the code and upon the excusal of the juror Furner, the alternate juror was substituted in his place in accordance with the court's understanding of what the proper procedure to be followed is. And for those reasons the motion is denied."

The next day the following transpired:

"Mr. Golden: Now, if our understanding of what took place yesterday is correct, at that time Mr. McGovern requested permission to enter a plea of once in jeopardy which would have the effect as though it was made at the time, and the court granted that permission.

"The Court: Yes.

"Mr. Golden: Now, then, for the record, your Honor, I make the plea on behalf of the defendants that, in addition to the plea of not guilty on the part of each defendant, the defendants and each of them plead that they and each of them have been once in jeopardy for the offense charged, namely conspiracy to commit abortions and conspiracy to practice medicine without a certificate, and that on yesterday, September the 19, 1946, . . . in this very courtroom, a jury of twelve persons, consisting of eleven of the persons presently in the jury box, plus a juror by the name of Thomas J. Furner, were duly and regularly impaneled and sworn and charged with the defendants' deliverance in this case— . . .

" . . . Well, in any case, duly and regularly impaneled and sworn to try the case. And I ask that that plea be entered with the effect as though it were made immediately

upon the happening of the proceedings of yesterday, when the juror was substituted for Mr. Furner.

"The Court: I suppose the procedure is for me to deny the plea.

"Mr. McGovern: Yes, but will the record show it was made?

"The Court: The plea will be denied and the record will show that the plea made by Mr. Golden was made on behalf of all the defendants and the record will further show that it was timely made."

The trial then went forward in the ordinary way, and the introduction of evidence, the arguments and the instructions consumed six trial days.

■ The appellants contend that in the proceeding which opened on September 17, 1946, and terminated with the verdict of guilty, they faced two juries and that jeopardy attached as soon as the original 12 jurors were sworn. This position is indicated by their plea, entered after Bailey's substitution, which was as follows: ". . . the defendants . . . plead that they . . . have been once in jeopardy . . . and that on yesterday . . . in this very courtroom, a jury of twelve persons, consisting of eleven of the persons presently in the jury box, plus a juror by the name of Thomas J. Furner, were duly and regularly impaneled and sworn and charged with the defendants' deliverance in this case . . ." It is indicated also by these statements in their briefs: (1st). "When the first jury in this third trial was impaneled and sworn these appellants 'entered into a period of jeopardy'. They then and there were in danger of conviction, by a jury of which Furner was a member." (2nd). "When the alternate Bailey was substituted for the juror Furner, the second trial began and appellants were then and there put twice in jeopardy for the same offense." (3rd). "When Furner was removed the jury was destroyed and the Court then and there lost jurisdiction to try the appellants." (4th). "When Furner was removed from the box that jury was destroyed as completely as if all twelve jurors were so removed."

They rely on the rule stated in *Jackson* v. *Superior Court*, 10 Cal.2d 350, 352 [74 P.2d 243, 113 A.L.R. 1422], as follows: "The authorities are in unison that jeopardy attaches to a defendant when he is placed on trial before a court of competent jurisdiction upon a valid indictment or information before a jury duly impaneled and charged with his deliverance . . . These authorities hold that a jury stands

charged with the deliverance of a defendant when its members have been impaneled and sworn . . ."

The appellants' position leaves out of consideration the factor, present in this case, that the court, in the exercise of discretion vested in it by section 1089 of the Penal Code, decided that alternate jurors were required, and ordered their selection. *Jackson* v. *Superior Court, supra,* which restates the formula that jeopardy attaches when the jury is impaneled and sworn, was a case where alternates were not at all involved. That formula, although invented long before alternate jurors were thought of, applies of course to cases where there are alternates as well as to cases where there are not. The question now presented is whether in this case, where alternates were ordered, jeopardy attached when the original 12 (including Furner) were sworn, or whether it attached only after the full complement of jurors of both classes was impaneled and sworn.

Section 1089 provides that "Whenever, in the opinion of a judge of a superior court . . . the trial is likely to be a protracted one, the court may cause an entry to that effect to be made in the minutes of the court, and thereupon, *immediately after the jury is impaneled and sworn,* the court may direct the calling of one or more *additional jurors,* in its discretion, to be known as 'alternate jurors' . . ." (Emphasis added.)

The record shows that immediately after the 12 jurors were sworn the court on the district attorney's suggestion decided that there should be two alternates, to be selected after the recess. Immediately after the recess it was stipulated that one alternate would suffice and Bailey was selected. It certainly was a proper exercise of discretion to order an alternate in this case. There had been two trials resulting in disagreements. There was no way of telling how long the third trial might take. As it turned out it took six days. On this appeal it is not claimed that the court did not properly exercise its discretion in *ordering* the alternate; it is claimed that the court erred in *substituting* the alternate.

We are satisfied that the question whether there were two juries in this case is answered in the negative by the language of section 1089 itself.

That section requires that the "alternate jurors shall be seated near, with equal power and facilities for seeing and hearing the proceedings in the case, and shall take the same

oath as the jurors already selected, and must attend at all times upon the trial of the cause in company with the other jurors; . . .''

Appellants characterize alternate jurors as mere ''observers''; the statute, however, calls them ''additional jurors.'' The oath which they must take is the same as that which the regular jurors take, viz., to try the particular case and render a verdict therein. The oath is administered to them at the very outset, and is not postponed until some emergency might call them into the box. But most compelling of all in its bearing on this inquiry, is the statutory requirement that the additional jurors ''must attend at all times upon the trial of the cause in company with the other jurors . . .'' This means that not a syllable of testimony can be introduced until the ''additional jurors'' have been sworn to try the case. If, therefore, the jury cannot function until the alternates have qualified, the jury cannot be said to be complete or impaneled until that time. For these reasons we are unable to follow appellants' argument that jeopardy attached in this case when the original 12 jurors were sworn, but must hold that it attached only after the alternate juror was sworn, hence that the appellants faced but one jury.

In the case of *People* v. *Peete*, 54 Cal.App. 333 [202 P. 51], the court discusses at great length section 1089 of the Penal Code and its operation and effect. In that case the question of double jeopardy was not presented but the constitutionality of the section was challenged as violative of section 7, article I, of the state Constitution, which provides that ''The right of trial by jury shall be secured to all, and remain inviolate; . . .'' Louise Peete, who had been convicted of first degree murder, claimed on appeal that she had not been given a trial by jury as known to the common law. It there appeared after 12 jurors had been impaneled and sworn that the trial was likely to be a protracted one calling for alternate jurors, and the name of one O'Dell was drawn from the term trial jury box. He was examined on his *voir dire*, passed for cause, accepted as the alternate, given the same oath as the jurors already selected, and attended at all times in company with the other jurors. After about two weeks of trial and after much evidence had been introduced, one of the regular jurors named Rudd became so ill that he was unable to continue, and the court excused him and put O'Dell in his place in the jury box. O'Dell sat

on the jury with the other 11 for the rest of the trial and with them voted for conviction. The court held (p. 366) that the trial was "by a jury of twelve in every essential particular." To have reached that conclusion the court must have reasoned that there was but one jury from the very beginning.

In the case of *People* v. *Howard,* 211 Cal. 322 [295 P. 333, 71 A.L.R. 1385], the defendant was convicted of murder in the first degree, without recommendation. On appeal the defendant made the same point as that made in the Peete case, namely, that his rights under section 7 of article I of the state Constitution had been violated. The Howard case parallels the instant case in that the juror there was not excused for a cause within the purview of section 1089. After the evidence was concluded, and during oral argument, a juror communicated to the judge the fact that she was prejudiced against two of the defense witnesses and their testimony. A conference in chambers resulted in the request by one of defense counsel that this juror be discharged and an alternate put in her place, and it was so stipulated. The alternate voted with the original 11 for conviction. The majority opinion, without mentioning the Peete case, arrives at a similar conclusion, namely, that the defendant had a fair trial by jury as known to the common law. The defense there argued that "a mistrial should have been ordered, and that to substitute the alternate for the regular juror under such circumstances amounted to a reversible error" in that the defendant was deprived of a trial by jury as guaranteed by section 7 of article I of the Constitution.

The Howard case differs from this in that defense counsel there requested the juror's dismissal while here they strenuously objected to it. There they not only stipulated to the juror's dismissal, but as appears from the opinion "The regularity of this proceeding by which the alternate was selected was also stipulated to." In spite of this stipulation as to its regularity, the court held that the procedure was *irregular*. Such holding would seem to dispose of any claim that that decision turned on the fact that defense counsel had requested the juror's dismissal and thereby waived the irregularity. The opinion does not so much as mention the request, or the stipulation, or the waiver, in giving its reasons. There might as well have been no stipulation at all, for it is entirely ignored as a factor influencing the decision.

The judgment of conviction in the Howard case was originally reversed (289 P. 830) in an opinion by Justice Richards, the Chief Justice and Justice Curtis dissenting. A rehearing was granted and the court on the rehearing made a reduction from first to second degree murder and affirmed the judgment as modified.

The first ground for the original reversal (see 289 P. 832; see, also, dissent at 211 Cal. 333, 334 [295 P. 337, 71 A.L.R. 1385]) was that although the Legislature has the power to provide for alternate jurors in a proper case (citing the Peete case) in so doing it ''has expressly limited the right of the trial court in any criminal case to substitute alternate jurors'' to the instances set forth in section 1089. From this the conclusion was drawn ''that the substituted alternate juror in the instant case, having been called to replace a regular juror who had neither died nor become ill . . . had no more right to sit or act in the case than any other person who might have been selected under like circumstances by any method not authorized by the express provisions of the foregoing section of the Penal Code.'' *This is substantially the appellants' position in the case at bar.*

The second ground for the original reversal was that because of the dismissal of the regular juror the defendant had been deprived of a trial by a jury of 12 persons, and that although defense counsel had requested such dismissal, and formally stipulated to it, the defendant had not personally consented to it. In its second and final opinion (211 Cal., p. 325) the court summarily disposed of that by saying, ''The situation here presented is not one in which a waiver of the right to a jury trial in a felony case enters into the consideration.''

The Howard case is authority herein on still another ground. When counsel in the instant case objected in the trial court to the substitution they stated: ''We submit that . . . putting another juror in his [Furner's] place will be denying to us our right to be tried by a jury of our own selection.'' The court in the Howard case in dealing with the same question said: ''The first essential of a common-law jury in criminal causes is a jury of twelve citizens, no more nor less, drawn from the locality, duly examined and sworn to try the cause. No objection was offered to the panel in this case. The second requirement is that the jurors must be impartial. No claim is made that juror

Shields, the alternate selected, was not in fact a fair and impartial person to act as a juror. While the record brought here does not contain the examination of the jurors on *voir dire,* it does indicate that the same proceedings were had in the selection of the alternate jurors as in the case of the first twelve who took their places in the box. We may assume that the defendant was satisfied that the alternate jurors thus selected would give him the fair and impartial trial to which he was entitled, should either be called in lieu of one of the other jurors.'' Let Bailey's name be substituted for Shields' and everything just quoted fits the case at bar precisely.

The Peete case, 54 Cal.App. 333, 366, *supra,* in dealing with the same subject points out that the alternate has been chosen ''only after an examination as to his qualifications, subject to the same challenges as the other jurors, and upon his being selected as an alternate—i. e., before the introduction of any evidence whatever—he has taken the same oath that was taken by the other jurors—an oath well and truly to try the matter in issue and a true verdict render according to the evidence (sec. 1089, Pen. Code, and sec. 604, Code Civ. Proc.) . . . we must assume that he will obey his oath, and that he will well and truly try the matter in issue, as he has sworn to do, just as he would if he were one of the original twelve jurors. Every safeguard that the law has thrown around the regular jurors to insure an impartial verdict, even to the extent of being kept in the custody of the sheriff during the trial, the alternate juror is surrounded with from the commencement to the end of the trial.''

It must be admitted that the circumstances of the substitution of Bailey for Furner were not within the purview of section 1089. In that respect the Howard case is again in point, where, at page 325, the court says:

''While the circumstances of this case are not such as to bring it within the purview of section 1089 of the Penal Code providing for alternate jurors, we think *the procedure by which the alternate juror was substituted* in the place and stead of the regular juror *was, at most, but an irregularity which in no way substantially affected the defendant's rights . . . It is not claimed that the verdict would have been any different had the alternate juror not participated in the deliberations of the jury.* He was subject to the same challenge and took the same oath as the other jurors. We should

assume that in all respects he obeyed his oath and that he well and truly tried all the matters in issue and rendered a true and impartial verdict in the cause. *Defendant's right was to a fair and impartial jury, not to a jury composed of any particular individuals.* (*People* v. *Durrant,* 116 Cal. 179, 199 [48 P. 75].)'' (Emphasis added.)

A very unusual and rather extreme case is that of *People* v. *Duncan,* 8 Cal.App. 186 [96 P. 414], which is relied on in the Howard case. In the Duncan case one of the persons who sat on the jury throughout the trial and voted for the verdict of guilty, was not even on the jury list and had not been summoned to serve as a juror. He was a mere interloper. The court held, nevertheless, that the verdict was not invalidated by this irregularity. With respect to that case the following appears in the Howard opinion, page 325:

''No case has arisen in this state, or perhaps elsewhere, precisely like the case at bar in its facts. Earlier cases, in which disqualification of a juror has been raised after verdict in criminal causes, are reviewed in *People* v. *Duncan,* 8 Cal. App. 186 [96 P. 414]. In that case, one Bernard Sherry appeared at the trial and substituted himself as a juror in place of John H. Sherry, whose name was upon the jury list, and who had been regularly subpoenaed to attend court as a trial juror. Upon the impanelment of the jury, the name of the rightful juror was drawn, and in answer thereto the other Sherry took his place in the box and, after due examination as to his qualifications, was accepted and sworn as a juror and acted throughout the trial of the cause. The jury returned a verdict of guilty of murder in the second degree. On appeal, it was contended that Bernard Sherry never became a juror because he was not selected and returned as required, and that therefore the verdict was the verdict of but eleven jurors. The court swept aside the contention, saying that it begged the question. The judgment of conviction was affirmed, and the petition to have the cause heard in the Supreme Court was denied.''

Appellants rely on *Jackson* v. *Superior Court,* 10 Cal. 2d 350, *supra,* but that case is distinguishable. In the case at bar the Furner episode arose before the jury in its entirety had been impaneled and sworn. True the 12 regular jurors had been sworn, but the alternate had not. In the Jackson case there was no alternate involved, simply the conventional jury of 12. In the process of impaneling that

jury a dispute arose over the use of peremptory challenges; the defense questioned the regularity of the process but a jury of 12 was nevertheless obtained and sworn to try the case. Later on the assistant district attorney had misgivings and stated to the court "that there probably was error committed which was prejudicial in the rulings made by the court relative to the exercising of the peremptory challenges." He moved for a mistrial; the defense resisted the motion but the court granted it, declared a mistrial, discharged the jury and continued the case to the following morning for retrial. The defense moved for permission to enter pleas of former jeopardy and former acquittal and when their motion was denied they obtained in the District Court of Appeal, a writ of prohibition to prevent the second trial. The Supreme Court granted a hearing and adopted the opinion of the District Court of Appeal. The holding was that the error in the exercise of the peremptory challenges, on which the court had declared the mistrial, was not prejudicial, and that it had been waived. Accordingly it was held that there had been no legal basis for declaring a mistrial and that, because a jury had been sworn, and thereafter discharged without legal cause, the defendants had been in jeopardy.

The case of *People* v. *Young*, 100 Cal.App. 18 [279 P. 824], on which the appellants strongly rely, is distinguishable on three grounds. The first is that a peremptory challenge was allowed in that case after the entire jury—regulars and alternates—had been impaneled and sworn. Section 1068, Penal Code provides that challenges "must be taken when the juror appears, and before he is sworn to try the cause; but the court may for cause permit it to be taken after the juror is sworn, and before the jury is completed." The challenge cannot be exercised *after* the jury is completed and sworn even with leave of court. (*People* v. *Scoggins*, 37 Cal. 676, 680; *People* v. *Galloway*, 202 Cal. 81, 90 [259 P. 332].) This was the error which upset the judgment. The second ground of distinction is that in the Young case the place of the challenged juror was filled, not by one of the alternates already examined and sworn to try the case, but by a juror called from the venire. Thus the unity of the jury composed of 12 regulars and two alternates already accepted by both sides (upon whose impanelment jeopardy had attached) was destroyed by the calling in of a new juror. Had this not been

done the situation would have been similar to that in the Howard case, where an alternate was used, and might well have led to a similar conclusion as that reached in the Howard case. The third ground of distinction has to do with the dismissal of the defendant from custody. The court having held it reversible error to permit the challenge after the jury had been completed and sworn, then had to decide whether there should be merely a reversal or whether the defendant should be dismissed from custody. The holding was that he should be dismissed, for he could not be again put on trial. Twelve regular jurors *and two alternates* had been examined, accepted and sworn to try the case before the unity of the jury was destroyed by the exercise of the peremptory challenge. Thus the jury *in its entirety* had been impaneled and sworn, and the defendant had been once in jeopardy. Therein lies the principal distinction between that case and this.

It is implicit in the Howard and Peete cases that a verdict by 12 jurors, one of whom was originally an alternate juror, is the verdict of the jury originally sworn to try the case. If the substitution of the alternate for one of the regular jurors is in accordance with the provisions of Penal Code, section 1089 no question of double jeopardy would arise. This can only be true if the substitution of the alternate for the regular juror does not destroy the unity of the jury. It does not destroy the unity of the jury because the jury is not complete until the alternate is accepted and sworn and the alternate is at all times a potential member of the regular jury.

The requirement of trial by one jury is satisfied, where a jury composed of 12 regular jurors and one or more alternates has been impaneled, if the verdict is returned by 12 jurors sworn to try the case although one or more alternates may be included in the jury which renders the verdict. If this is true where the substitution has been made in the manner provided by Penal Code, section 1089 it must be true where it has been made in an irregular manner. The same number of jurors sworn to try the case in the same way are involved in either instance. Either the substitution of an alternate for a regular juror destroys the unity of the jury or it does not. If it does not destroy the unity of the jury as is settled by the Peete and Howard cases, then the substitution of an alternate for a regular juror in an unauthorized manner does not place the defendant twice in jeopardy but is merely an error of law which should not lead to a reversal in the absence of a showing that it has resulted in a miscar-

riage of justice under article VI, section 4½ of the Constitution.

██    We have already seen that the juror Bailey was a juror of the defendants' own selection, for he had been subjected to the same examination as to qualifications and impartiality as had Furner and the other 11. We have seen, also, that a defendant has a right "to a fair and impartial jury, not to a jury composed of any particular individuals." Further, on the question of a fair trial this is to be said: in the Peete case the substitution was made after two weeks of trial and "after much evidence had been introduced"; in the Howard case the substitution was made after all the evidence had been introduced, and during the argument. In the case at bar, unlike these other cases, Bailey was substituted at the very outset and as a regular juror heard every word of testimony, hence the same 12 minds worked on this case throughout.

Twenty-five witnesses testified for the prosecution and over 50 exhibits, documentary and physical, were introduced. None of the defendants took the stand nor did they call any witnesses whatever. There is no claim of insufficiency of the evidence; there is no claim of error in the admission or rejection of evidence or in the giving or refusing of instructions. The sole point relied on is the jeopardy question. We are satisfied that no miscarriage of justice resulted from the irregularity complained of.

The judgment appealed from is affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 25, 1948.