[No. E007173. Fourth Dist., Div. Two. Nov. 21, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ROY GLENN, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Parts 2 through 7 are not published; they do not meet the standards for publication contained in California Rules of Court, rule 976.1.

**COUNSEL**

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Ruldolf Corona, Jr., Janelle B. Davis and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—A jury convicted James Glenn of two counts of committing lewd and lascivious acts on a minor (Pen. Code, § 288, subd. (a)), one count of attempting such acts (Pen. Code, §§ 664/288, subd. (a)), and two counts of indecent exposure (Pen. Code, § 314, subd. l). He was sentenced to prison and appeals, claiming that there was error in the constitution of the jury, that the evidence was insufficient to sustain one of the counts, that certain physical evidence should not have

been admitted, that the trial court should not have denied his motion for a transcript of his earlier trial, that he should not have been subject to impeachment with a prior conviction, that testimony of an expert was improperly admitted, and that jury instruction error occurred. We reject his contentions and affirm.

## FACTS

Glenn entertained the three victims, preadolescent boys, in his apartment by showing them sexually explicit films on his VCR. He touched one victim on his penis, attempted to do the same to another, and touched the third on his behind. Glenn also exposed himself and masturbated in the boys' presence. These acts occurred on various dates during the summer of 1988.

### 1. *Jury Selection*

During jury selection, the defense exercised four peremptory challenges. After using the fourth, it announced twice that it was satisfied with the jury as constituted. Immediately after the second announcement, the prosecution stated that it, too, was satisfied with the jury. At that point, there were 14 people on the panel. The court explained that it intended to swear in all 14 and have them listen to the trial. Then, when the evidence had been presented, the clerk of the court was to randomly select the names of two of the fourteen, and those individuals would be designated the alternates and would not participate in deliberations unless one of the twelve had to be removed. The court stated its reasons for doing so was to ensure that the two people who were ultimately designated as alternates would pay as much attention to the trial as they would if they believed they were regular jurors. Neither defense counsel nor the prosecutor objected to this proceeding or made any comment upon it whatsoever. At the close of evidence, when the clerk randomly selected two jurors to serve as alternates, the defense was once again silent.

■ Now, for the first time, Glenn objects to this procedure, claiming it violates constitutional and statutory law and because of this, he is entitled to reversal of his conviction with no retrial due to double-jeopardy concerns. We disagree.

As to the constitutional provision, Glenn cites article I, section 16, of the California Constitution, which provides for a jury of 12 persons to serve in criminal trials. In our view, a jury of 12 is precisely what Glenn got. Although 14 people heard the evidence, the same occurs in any trial in which the alternates are selected at the time the regular panel is sworn. Only 12 people deliberated here and decided Glenn's fate. He is entitled to nothing else under the Constitution.

Glenn then refers to cases in which criminal defendants have waived having less than 12 persons serving on the jury and notes that those decisions require the defendant and his attorney make a knowing, intelligent, and express waiver on the record of less than a full jury. They have no application here, where guilt was decided by a jury of 12 people, as the Constitution provides.

As to the statutory provisions, Glenn first cites the following portion of Penal Code section 1089:

"Whenever, in the opinion of a judge of a superior . . . court about to try a defendant . . . , the trial is likely to be a protracted one, . . . immediately after the jury is impaneled and sworn, the court may direct the calling of one or more additional jurors, in its discretion, to be known as 'alternate jurors.' "

Although what the court did here technically violated this provision, a common-sense reading of the statute demonstrates that its purpose is more to notify trial courts that they retain discretion to select alternate jurors than to establish an inviolable schedule for when this must be accomplished.

Glenn also calls our attention to the following provision of section 1089:

"If at any time, . . . a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged . . . ."

Not surprisingly, cases construing this provision have held that members of the jury may not be removed without good cause. Glenn argues that this provision and those cases were violated here when the two alternates were chosen, because they were "removed" from the jury without good cause. We disagree. In *In re Mendes* (1979) 23 Cal.3d 847, 853 [153 Cal.Rptr. 831, 592 P.2d 318], the Supreme Court commented that "the selection of the jury had not been completed because the alternate jurors had not as yet been chosen and sworn . . . ."

Glenn argues that procedure used here interfered with the exercise of his right to peremptory challenges. We cannot see how it did since Glenn exercised only four of his peremptories. Had the trial court failed to give him his regular 10, plus 2 for the alternates, we would conclude otherwise.[1]

[1] In support of his position, Glenn cites *People* v. *Diaz* (1951) 105 Cal.App.2d 690 [234 P.2d 300], which we believe is clearly distinguishable. In *Diaz*, 12 persons were called for the jury and a 13th was designated for an alternate position. This 13th person was removed by a defense peremptory. The person who replaced him as an alternate was removed by a prosecution peremptory. The person who replaced him was, in turn, removed by the defense, per-

Glenn then, without satisfactory elaboration, argues that his failure to exhaust his peremptories, a fatal omission in other cases, does not foreclose his claim here because "this issue is not simply one of an error in the selection process." He goes on to assert that he had "no opportunity to be involved in the selection of who would be the alternate jurors or the regular jurors nor did he have either the challenges or the opportunity to exercise them." We completely disagree with his latter statement. As to the former, we can only comment that no lawyer truly has control over who will ultimately sit on the regular jury and who will be alternates because of the uncertainty of jurors being dismissed for good cause throughout the course of the trial and deliberations. Glenn's statement also presupposes that counsel select and treat alternates differently from members of the regular jury, a dangerous practice indeed, given the uncertainty as to who will ultimately serve on the latter.

Glenn claims that this method of alternate selection may have affected some, or perhaps all, of the jurors who ultimately deliberated because they may have assumed they would end up as alternates and not paid sufficient attention during trial. Of course, this is rank speculation. Moreover, it assumes that whichever jurors did this ignored the instruction of the court that this method was being employed specifically to eliminate this possibility. Finally, it presupposes that all alternates in all trials who are informed from the beginning as to their status do not pay as much attention to the trial as regular jurors, at best, an undocumented assertion.

Finally, in his reply brief, Glenn asserts that if he stipulated to anything at trial, it was to a jury of 14 people, which he ultimately did not receive. We disagree. The court made quite clear from the beginning that only 12 people would decide Glenn's fate. Therefore, if he stipulated by his silence, he got what he asked for.

While concluding, as we do, that Glenn has not demonstrated that he was prejudiced by the method utilized here, we condemn its future use in trial courts. First, it technically violates Penal Code section 1089. Second, there

emptorily. The woman who replaced him was left as an alternate. The trial court forced defense counsel to use two of his regular peremptories on the alternates, thus depriving him ultimately of the full number of peremptories to which he was entitled by statute. In reversing the conviction, the Court of Appeal condemned this practice.

It is noteworthy that defense counsel in *Diaz*, at the time his peremptories were prematurely terminated, objected to this limitation, and, at the close of the prosecution's case-in-chief, moved for a mistrial. The court's comments about counsel's action is especially instructive in our case:

"This is not a case where a defendant took the chance of a trial by regular jurors who he knew had not been impaneled in conformity with the statute and, after an adverse verdict, claimed error . . . ." (*Id.*, at p. 695.)

However, this is exactly what Glenn is doing here.

has been no empirical evidence that alternate jurors, chosen via the statutory method, do not pay attention to the trials in which they sit. Thus, the method's utility is, at best, unestablished. Next, use of the method necessitates trial courts taking extreme care in preserving counsel's right to a proper number of peremptory challenges. In this case each side was entitled to 12 (not the normal 10) peremptory challenges when selecting a jury of 14 regular jurors including 2 as potential alternates. Finally, unless counsel is warned in advance that this method is going to be used, he/she may not take the opportunity to question prospective jurors, during voir dire, about their willingness to and interest in serving as alternates. In short, there is little or no demonstrable reason for deviating from the statutorily prescribed method of selecting and constituting the jury and alternate jurors by venturing into an alternate method, fraught with potential problems and no supportable benefits.

2.-7.*

. . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Dabney, J., and Timlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 30, 1991. Mosk, J., was of the opinion that the petition should be granted.

---

* See footnote, *ante*, page 618.