[No. S126550. July 27, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN LAMAR COTTLE, Defendant and Appellant.

**COUNSEL**

Victor S. Haltom for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Matthew L. Cate, Janet E. Neely, Michael A. Canzoneri and Sean M. McCoy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CORRIGAN, J.**—Here we consider whether a trial court has discretion to reopen jury selection after the trial jury has been impaneled, but before alternate jurors are sworn. We hold that the trial court lacks discretion to do so under the Trial Jury Selection and Management Act (Code Civ. Proc., § 190 et seq., eff. Jan. 1, 1989)[1] (Trial Jury Selection Act or Act).

### I. FACTS AND PROCEDURAL BACKGROUND

Defendant Kevin Lamar Cottle was charged with leaving the scene of an accident and four counts of assault with a motor vehicle. Two of the latter counts carried enhancement allegations that he personally inflicted great bodily injury.

---

[1] Unless otherwise indicated all further statutory references are to the Code of Civil Procedure.

After both sides consecutively passed their peremptory challenges, 12 trial jurors were sworn. During the selection of alternate jurors, sworn Juror No. 12 asked to address the court about some reservations, and the following exchange ensued:

"THE COURT: Yes sir, [Juror No. 12] why don't you have a seat. There is something you wanted to bring to the attention of the court?

"A. Yes, your Honor. Physically hurting people, anything like injury, right? Kind of mentally fits me. My problem is in effort [*sic*] in civil case, I would be more comfortable. In a criminal case, my feeling is and I would—justice be served with this jury. I don't want to go with the feeling that, okay, we didn't do the right thing in this court. So that's, that's my mental block. But now I can work around it, I'll do my best. But I just thought I just let you know.

"Q. Right. I am not sure I understand what, what you are telling me. Are you saying that—

"A. Aftermath, my feeling would be just whatever verdict we come with did anything go wrong in this case, right? I am responsible for this. Kind of mental problem.

"Q. Is this some hesitancy you have about, for example, voting guilty because you feel that would be uniquely burdensome to you?

"A. Yeah.

"Q. Well, if the evidence here was sufficient to prove beyond a reasonable doubt that Mr. Cottle engaged in the conduct that is alleged here according to the law, can you vote for a guilty verdict?

"A. Yeah, try to.

"Q. Try to is a difficult word for me.

"A. Again?

"Q. Your obligation as a juror—

"A. Right.

"Q. —would be to vote for that verdict which you believe is correct consistent with the facts as you determine them and the law and you cannot,

for example, let sympathy for Mr. Cottle affect that decision. It has to be based on the evidence and the law and not on some sense of sympathy. All right?

"A. Right.

"Q. Can you do that?

"A. Yeah. But again my mind and I feel more comfortable in a civil case than a criminal case.

"Q. Well, I do both and sometimes I feel more comfortable with civil cases than criminal cases too, but they are there and they need to be tried and there is a right to jury trial.

"A. Right.

"Q. For them.

"Now I want you to just reflect on this a second. Can you truly be fair and impartial in this case both to Mr. Cottle and to the People?

"A. Yeah."

Defense counsel questioned Juror No. 12 as follows:

"Q. [Juror No. 12], is there any religious component to your judging facts and criminal—

"A. Not about hurting people is a bad thing. My mental, anything related to injury, inflicting injury, I don't like it.

"Q. Would you let your opinion be swayed by sympathy for the victims in this case?

"A. Probably, yeah.

"Q. You would?

"A. Yeah.

"Q. Could you—could you keep an open mind until the end to determine whether or not there is criminal responsibility for the injuries to the victim?

"A. Sure.

"Q. Okay. Do you understand people get hurt all the time in auto accidents. They are not criminally responsible for it, they are just accidents.

"A. Correct.

"Q. Sometimes people aren't responsible for hurting some other people?

"A. Correct.

"Q. It doesn't do to them to put restrictions back again, does it? Do you understand?

"A. Yeah, I got it.

"Q. Do you understand what I am saying? So you can't favor Mr. Cottle or the victim, you have to judge it on the facts, the testimony?

"A. Okay.

"Q. Put that together with the law and come up with a decision, can you do that?

"A. Yeah, I can do that.

"Q. Think so?

"A. Yeah.

"Q. All right. Let me ask you again. Is your, is your vote when you are in the jury room going to be based or could it be influenced by sympathy for the victims who are hurt in this?

"A. Possibility again. Without looking at the data, it is going to be hard. I am not sure.

"But I will do my best to analyze the data."

In response to the prosecutor's questions, Juror No. 12 said he understood that he was not "to consider sympathy, passion, punishment, [or] any consequences for anyone." Upon additional questioning from the trial judge, he assured the court he understood that he had to put aside his feelings of sympathy and that he would do so.

The court denied a defense motion to dismiss Juror No. 12 for cause, stating: "There is not enough here for cause. His final assurance to the court was, I thought his demeanor was sincere. He was knowledgeable of the law at that time, indicated he could comply with the law. He was wobbly as to both sides at one time or another during the voir dire, but I believe the final line is that he is [a] fair and impartial juror. There is not a basis for cause." Defendant then moved to reopen jury selection so he could use an unused peremptory challenge to dismiss Juror No. 12. The trial court denied the motion, observing that because the 12 jurors had been sworn, defendant was not entitled to reopen jury selection to use a peremptory challenge.

The jury convicted defendant on four counts of assault and found true the special allegations. Defendant was sentenced to 10 years in prison.

The Court of Appeal reversed, relying on *People v. Armendariz* (1984) 37 Cal.3d 573 [209 Cal.Rptr. 664, 693 P.2d 243] (*Armendariz*), and concluding that the trial court should have permitted the defense to reopen jury selection.

## II. Discussion

In *Armendariz*, the jury panel had been sworn. After five alternate jurors had been selected but not sworn, two trial jurors were discharged for cause. During the main jury selection, defendant had exercised only four of his 26 peremptory challenges. After the two trial jurors were discharged, defendant asked to use two of his remaining challenges, in addition to the five challenges allowed for alternate jurors. The trial court denied the request, relying on Penal Code section 1089, which then provided that " 'the prosecution and the defendant shall each be entitled to as many peremptory challenges to such alternate jurors as there are alternate jurors called.' " (*Armendariz, supra*, 37 Cal.3d at p. 579, fn. 2.) After defense counsel exercised five peremptory challenges, defendant moved to reopen selection of the jury so he could exercise his 22 unused challenges. (*Id.* at p. 578.) The trial court denied the request.

We reversed, relying heavily on former Penal Code section 1068, which provided that a challenge to a juror " 'must be taken when the juror appears, and before he is sworn to try the cause; but the Court may for cause permit it to be taken after the juror is sworn, and before the jury is completed.' " (*Armendariz, supra*, 37 Cal.3d at p. 581, quoting former Penal Code section 1068, enacted in 1872 and repealed by Stats. 1988, ch. 1245, § 28, p. 4155.) We concluded, " '[t]his section clearly contemplates that there may be an appreciable interval between the moment when a juror is sworn and the point at which the jury is deemed to be complete. It has long been established that a peremptory challenge may be made to a juror during this interlude if there

is good cause for the failure of an earlier exercise of the challenge. [Citations.]' [Citation.]" (*Armendariz, supra*, 37 Cal.3d at p. 581, quoting *In re Mendes* (1979) 23 Cal.3d 847, 855 [153 Cal.Rptr. 831, 592 P.2d 318].)[2] Thus, we held that the trial court erred in failing to reopen jury selection and permitting the defendant to exercise his remaining peremptory challenges. (*Armendariz, supra*, 37 Cal.3d at p. 581.)

The Attorney General contends reliance on *Armendariz, supra*, 37 Cal.3d 573, is misplaced because repeal of former Penal Code section 1068 eliminated a trial court's discretion to reopen jury selection after the trial jury has been sworn. We agree.

In 1988, the Trial Jury Selection Act repealed former Penal Code section 1068.[3] The Act constituted "an extensive revision of the law with respect to juries, consolidating various provisions relative to juries in civil and criminal causes, and revising provisions relative to the qualifications of trial jurors, . . . the selection of jury panels, . . . challenges to jurors, . . . thereby imposing new state-mandated local programs . . . ." (Legis. Counsel's Dig., Assem. Bill No. 2617 (1987–1988 Reg. Sess.).) It applies to both civil and criminal cases. (Code Civ. Proc., § 192.) Here, we must construe the Act to determine whether *Armendariz, supra*, 37 Cal.3d 573, retains its precedential force.

"In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment. [Citation.] We look first to the words of the statute, which are the most reliable indications of the Legislature's intent. [Citation.] We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole. [Citations.]" (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487 [30 Cal.Rptr.3d 823, 115 P.3d 98].) In addition, " '[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject [in this case the *same* subject] is significant to show that a different intention existed.' [Citations.]" (*People v. Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1].)

In repealing former Penal Code section 1068, the Legislature did not replace it with a similar provision authorizing the reopening of jury selection

---

[2] *In re Mendes* was also based on former Penal Code section 1068. (*In re Mendes, supra*, 23 Cal.3d at p. 855 ["We find significance in the language of [former Penal Code] section 1068 which provides that a challenge to a juror 'must be taken when the juror appears, and before he is sworn to try the cause; but the Court may for cause permit it to be taken after the juror is sworn, and before the jury is completed' "].)

[3] The Act became effective on January 1, 1989.

after the trial jury has been sworn. Instead, it added Code of Civil Procedure sections 226 and 231. Subdivision (a) of section 226 provides: "A challenge to an individual juror may *only* be made before the jury is sworn." (Italics added.) Subdivision (d) of section 231 then explains: "Peremptory challenges shall be taken or passed by the sides alternately, commencing with the plaintiff or people; and each party shall be entitled to have the panel full before exercising any peremptory challenge. When each side passes consecutively, *the jury shall then be sworn*, unless the court, for good cause, shall otherwise order." (Italics added.)

Here, both sides consecutively passed their peremptory challenges, and the jury was sworn. (Code Civ. Proc., § 231, subd. (d).) At this point, by its terms, section 226, subdivision (a) barred the court from reopening jury selection and permitting further peremptory challenges. (See also *People v. Hernandez* (2003) 30 Cal.4th 1, 12 [131 Cal.Rptr.2d 514, 64 P.3d 800] (conc. opn. of Werdegar, J.) [reopening voir dire and permitting a party to exercise additional peremptory challenges violates Code Civ. Proc., § 226, subd. (a)].) Under the plain language of the applicable statutes, the trial court could discharge Juror No. 12 only if there was good cause for his removal. (Code Civ. Proc., §§ 233 & 234; Pen. Code, § 1089.)[4] The Legislature has eliminated the language upon which *Armendariz, supra,* 37 Cal.3d 573, was based, thus superseding its precedential authority.

Defendant argues to the contrary, urging that when a trial is conducted with alternate jurors, the impanelment of "the jury" is not complete until the alternates have been selected and sworn. Defendant's argument, however, is based on an untenable interpretation of section 226, subdivision (a). When the relevant language of section 226 is considered in light of other sections in the Act, it becomes clear that the phrase "the jury is sworn" refers to the trial jury and not the alternates.

Section 193 defines three kinds of juries: (1) "[g]rand juries," (2) "[t]rial juries," and (3) "[j]uries of inquest." (Code Civ. Proc., § 193, subds. (a), (b) and (c).) Code of Civil Procedure section 194, subdivision (*o*) defines "[t]rial jurors" as "those jurors sworn to try and determine by verdict a question of fact." Subdivision (p) of section 194 defines "[t]rial jury" as "a body of persons selected . . . and sworn to try and determine by verdict a question of fact." Section 220 describes the number of jurors on a trial jury and states in pertinent part that, "A trial jury shall consist of 12 persons . . . ." Read together, these statutes establish that a trial jury consists of 12 jurors

---

[4] The Act also added Code of Civil Procedure sections 233 and 234 which track the provisions of Penal Code section 1089. Penal Code section 1089 addresses the discharge of sworn jurors for "good cause" and the selection of alternate jurors.

sworn to reach a verdict on questions of fact. "[T]he jury is sworn" when those 12 trial jurors have been sworn. (Code Civ. Proc., § 226, subd. (a).)

Sections 233 and 234 provide additional support for the conclusion that the phrase "the jury is sworn" refers to the 12 trial jurors. Section 233 sets out the procedures to follow if a juror is unable to perform his or her duty before a verdict is reached: "If, before *the jury* has returned its verdict to the court, a juror becomes sick or, upon other good cause shown to the court, is found to be unable to perform his or her duty, the court may order the juror to be discharged." (Italics added.)

Section 234, in turn, states, "Whenever, in the opinion of a judge of a superior court about to try a civil or criminal action or proceeding, the trial is likely to be a protracted one, or upon stipulation of the parties, the court may cause an entry to that effect to be made in the minutes of the court and thereupon, immediately after *the jury* is impaneled and sworn, the court may direct the calling of one or more additional jurors, in its discretion, to be known as 'alternate jurors.'

"These alternate jurors shall be drawn from the same source, and in the same manner, and have the same qualifications, as *the jurors already sworn*, and shall be subject to the same examination and challenges. However, each side, or each defendant, as provided in Section 231, shall be entitled to as many peremptory challenges to the alternate jurors as there are alternate jurors called.

"The alternate jurors shall be seated so as to have equal power and facilities for seeing and hearing the proceedings in the case, and shall take the same oath *as the jurors already selected*, and shall, unless excused by the court, attend at all times upon the trial of the cause in company with the other jurors, but *shall not participate in deliberation* unless ordered by the court, and for a failure to do so are liable to be punished for contempt.

"They shall obey the orders of and be bound by the admonition of the court, upon each adjournment of the court; but if the *regular jurors* are ordered to be kept in the custody of the sheriff or marshal during the trial of the cause, the alternate jurors shall also be kept in confinement with the other jurors; and upon final submission of the case to *the jury*, the alternate jurors shall be kept in the custody of the sheriff or marshal who shall not suffer any communication to be made to them except by order of the court, and shall not be discharged until the original jurors are discharged, except as provided in this section.

"If at any time, whether before or after the final submission of the case to *the jury*, a juror dies or becomes ill, or upon other good cause shown to the

court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate, who shall then take his or her place in the jury box, and be subject to the same rules and regulations as though he or she has been selected as one of the original jurors." (Italics added.)

The italicized portions of the statutes make clear that alternate jurors are treated distinctly under the code, thus supporting the conclusion that "the jury is sworn" is a phrase relating only to the 12 trial jurors and not the alternates. Among other important points of differentiation, alternate jurors do not participate in deliberations unless ordered to do so. A court may make such an order only after the discharge of a juror, upon a showing of good cause that the original juror is unable to perform his or her duty. Those sitting only as alternate jurors never determine questions of fact. They do not participate in the returning of a verdict unless they join "the jury" in place of an original trial juror.

Thus, the Legislature set forth separate requirements for alternate jurors and gave the court discretion whether to select alternates at all. This distinct treatment demonstrates that a "jury" does not include alternate jurors. (See Code Civ. Proc., §§ 233 & 234; Pen. Code, § 1089.)

Adoption of defendant's construction of "the jury is sworn" still would not resurrect former Penal Code section 1068, or confer the right previously secured under the *Armendariz, supra,* 37 Cal.3d 573 interpretation of that code section. Instead, we would be left with a scheme in which both sides could seek to exercise unused peremptory challenges against members of the actual jury during selection of the alternates, encouraging gamesmanship. For example, if a favorable juror was selected as an alternate, a party would then try to challenge a member of the jury so that the alternate could replace the juror. Nothing in the legislative history suggests an intention to create such a scheme.

Defendant's cited cases are inapposite. Although these cases considered when the impanelment of a jury is complete, they did so in the context of constitutional claims based on either double jeopardy[5] or a challenge to the improper use of peremptory challenges as discussed in *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] and *People v. Wheeler*

---

[5] See *People v. Hernandez, supra,* 30 Cal.4th at page 5; *In re Mendes, supra,* 23 Cal.3d at page 853; *People v. Burgess* (1988) 206 Cal.App.3d 762, 767 [253 Cal.Rptr. 828]; *People v. Hess* (1951) 104 Cal.App.2d 642, 680 [234 P.2d 65]; *People v. Burns* (1948) 84 Cal.App.2d 18, 26 [189 P.2d 868].

(1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].[6] This case does not involve those issues.[7] "Peremptory challenges are intended to promote a fair and impartial jury, but they are not a right of direct constitutional magnitude." (*People v. Webster* (1991) 54 Cal.3d 411, 438 [285 Cal.Rptr. 31, 814 P.2d 1273].) The selection of alternate jurors helps guard against the risk of a mistrial should a juror become unable to serve. Alternate jurors serve an important role, but they are not members of "the jury" within the meaning of sections 226, subdivision (a) and 231, subdivision (d). The Legislature was free to define when peremptory challenges may be exercised and did so when it passed the provisions at issue here. (*In re Lance W.* (1985) 37 Cal.3d 873, 891 [210 Cal.Rptr. 631, 694 P.2d 744].)[8]

■ Therefore, we conclude that under the Act, the Legislature intended that a trial jury be comprised of 12 jurors sworn by the court "to try and determine by verdict . . . question[s] of fact" (§ 194, subd. (*o*)), regardless of whether alternate jurors are to be called, selected, and sworn. Once a jury has been sworn, the court lacks authority to reopen jury selection proceedings. (§ 226, subd. (a).)

---

[6] See *People v. McDermott* (2002) 28 Cal.4th 946, 970 [123 Cal.Rptr.2d 654, 51 P.3d 874]; *People v. Rodriguez* (1996) 50 Cal.App.4th 1013, 1023 [58 Cal.Rptr.2d 108]; *People v. Gore* (1993) 18 Cal.App.4th 692, 703 [22 Cal.Rptr.2d 435].

[7] Defendant also cites *People v. Glenn* (1990) 225 Cal.App.3d 618 [275 Cal.Rptr. 276] in support of his claim. In *Glenn*, the trial court followed the highly unusual procedure of selecting 14 individuals from the juror pool and swearing all 14 before taking evidence. (*Id.* at p. 620.) The trial court intended to have all 14 observe the trial. When the presentation of evidence was complete, the clerk of the court was to randomly select two names and those two individuals would be designated as alternate jurors. The trial court's rationale for following this procedure "was to ensure that the two people who were ultimately designated as alternates would pay as much attention to the trial as they would if they believed they were regular jurors." (*Ibid.*) Defendant challenged the trial court's procedure on constitutional and statutory grounds. Defendant's constitutional claim was based on article I, section 16 of the California Constitution, which provides for a jury of 12 persons to serve in felony criminal trials. The *Glenn* court held that because defendant received a jury of 12, there was no constitutional violation. (*Glenn, supra,* at p. 620.) Defendant's statutory claim was based on Penal Code section 1089. Defendant argued that the trial court abused its discretion when the alternates were selected because they were " 'removed' from the jury without good cause." (*Glenn, supra,* at p. 621.) Although it criticized the trial court's procedure and concluded that Penal Code section 1089 was technically violated, the *Glenn* court upheld the defendant's conviction because he suffered no prejudice. (*Glenn, supra,* at pp. 620–623.) Because *Glenn* was decided on facts not present here, it is inapplicable.

[8] Defendant's reliance on our decision in *People v. Griffin* (2004) 33 Cal.4th 536 [15 Cal.Rptr.3d 743, 93 P.3d 344], is also misplaced. In *Griffin*, the court twice denied defendant's requests for a mistrial. On appeal, defendant claimed that the court had a *sua sponte* duty to reopen jury selection. Citing previous case law, we held the court had no such duty and rejected the argument. (*Id.* at pp. 566–567.) Thus, *Griffin* did not reach the issue raised in this case and does not help defendant.

This conclusion does not leave the court without recourse should a juror become unable to serve. Code of Civil Procedure sections 233 and 234 and Penal Code section 1089 provide for the removal of a juror upon a showing of good cause.

### III. DISPOSITION

We reverse the Court of Appeal's judgment and remand this matter for proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.