23 Cal.3d 847 (1979)
592 P.2d 318
153 Cal. Rptr. 831
In re THERON MENDES on Habeas Corpus.
MICHAEL LOUIS STEVENSON, Petitioner,
v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent; THE PEOPLE, Real Party in Interest.
Docket No. Crim. 20665. S.F. No. 23919.
Supreme Court of California.
March 27, 1979.
*850 COUNSEL
George Bumanglag and Vivien C. Ide for Petitioners.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Gary A. Binkerd, Deputy Attorneys General, for Respondent in Crim. No. 20665 and for Real Party in Interest.
No appearance for Respondent in S.F. No. 23919.
OPINION
RICHARDSON, J.
We hold that the selection of a jury in a criminal case is not completed and jeopardy does not attach until all of the jurors, including any alternate jurors, are sworn. As we explain, the trial court properly impaneled the jury and, in the present case, prosecution of defendants was not barred by the former jeopardy provisions of either the Fifth Amendment to the United States Constitution, or article I, section 15, of the California Constitution.
Defendants Mendes and Stevenson were charged with the attempted receipt of stolen property (Pen. Code, §§ 664, 496) and Stevenson was charged, additionally, with receiving stolen property (§ 496). They were jointly tried before the same jury and Mendes was convicted and placed on probation on condition that he spend 300 days in county jail. His appeal from the conviction having been dismissed October 4, 1978, by the Court of Appeal when he failed to file an opening brief, he now seeks habeas corpus relief on the ground that he was placed twice in jeopardy. (1) It is well established that habeas corpus is an appropriate remedy to resolve the point. (In re Hurlic (1977) 20 Cal.3d 317 [142 *851 Cal. Rptr. 443, 572 P.2d 57]; In re Bryan (1976) 16 Cal.3d 782 [129 Cal. Rptr. 293, 548 P.2d 693].)
The jury was unable to reach a verdict as to Stevenson and he now seeks to prevent his retrial by obtaining a writ of prohibition on a similar claim of former jeopardy. (2) We have held that recourse to prohibition relief is available to prevent retrial when a defendant has been once in jeopardy. (Curry v. Superior Court (1970) 2 Cal.3d 707, 712 [87 Cal. Rptr. 361, 470 P.2d 345]; Paulson v. Superior Court (1962) 58 Cal.2d 1, 5 [22 Cal. Rptr. 649, 372 P.2d 641].)
We trace the relevant facts concerning the selection of the jury at defendants' trial. Trial began on January 16, 1978. Twelve jurors were chosen and sworn. The court then proceeded to the selection of an alternate juror. Approximately 5:30 p.m., however, challenges to the prospective jurors had exhausted the venire without the selection of an alternate. At that point the court announced: "We're going to go ahead without an alternate, and you can put that on the record."
On the next morning, January 17, 1978, before the arrival of counsel at the courtroom, one of the jurors, Mrs. McQuown, advised the court that her brother had died during the night, and she was immediately excused from further service. When counsel returned, the trial court informed them of the circumstances affecting Mrs. McQuown and proposed that counsel choose a juror to replace her and suggested that two alternates be selected. Each defense counsel then moved for a mistrial on the ground of former jeopardy. These motions were denied.
During the selection of the additional jurors the court permitted counsel to exercise any unused peremptory challenges to the remaining 11 of the original 12 jurors previously selected. During this process three additional jurors of the original twelve were peremptorily challenged and excused, two by the prosecution, one by the defense. These jurors were replaced. The 12 jurors were then sworn and 2 alternates were thereupon selected.
Defendants assert procedural error by the trial court in (1) excusing Mrs. McQuown without first conducting a hearing, and (2) allowing peremptory challenges to jurors already sworn. We examine both of these assertions in turn.
*852 (3) Penal Code section 1089 (all statutory references are to that code unless otherwise cited) provides in relevant part: "If at any time, whether before or after the final submission of the case to the jury, a juror ... upon ... good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged ... and draw the name of an alternate, who shall then take his place in the jury box." (See also § 1123; People v. Davis (1972) 27 Cal. App.3d 115, 120 [103 Cal. Rptr. 494].)
We may reasonably infer that Mrs. McQuown, after advising the trial judge of the loss of her brother, asked to be excused from jury duty. The court immediately excused her without either consulting counsel or conducting a hearing. The obvious purpose of such a hearing is to determine whether there is "good cause" to excuse a juror. Unless the facts clearly establish a sufficient basis on which to reach an informed and intelligent decision, the court must conduct an appropriate hearing in the presence of litigants and counsel on the question of the juror's ability to serve. (People v. Hamilton (1963) 60 Cal.2d 105, 125 [32 Cal. Rptr. 4, 383 P.2d 412], disapproved on other grounds in People v. Morse (1964) 60 Cal.2d 631, 648-649 [36 Cal. Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].) While we reaffirm the principle that "the trial court has at most a limited discretion to determine that the facts show an inability to perform the functions of a juror, and that inability must appear in the record as a demonstrable reality" (People v. Compton (1971) 6 Cal.3d 55, 60, fn. omitted [98 Cal. Rptr. 217, 490 P.2d 537]), we have no difficulty, in the case before us, in concluding that the reason for Mrs. McQuown's request to be excused clearly constituted "good cause." The action of a court in discharging a juror must be tested in the light of the evidence before it at the time of the decision. (People v. von Badenthal (1935) 8 Cal. App.2d 404, 412 [48 P.2d 82].) In this specific instance, where the trial had not begun, we are satisfied that the court was warranted in concluding that normal grief would make it exceedingly difficult for Mrs. McQuown to concentrate on the evidence, the arguments of counsel, the court's instructions and the jury's deliberations. In our view, a hearing would have been pointless and perhaps callous. The court's decision to excuse her immediately was not an abuse of discretion.
(4a) Defendants argue that there was further error. They contend that the court, by excusing Mrs. McQuown and then allowing peremptory challenges to jurors already sworn, improperly discharged the jury without the requisite showing of legal necessity as mandated by section *853 1123. They urge, accordingly, that any further legal proceedings against them are barred by principles of former jeopardy. Concluding as we do that the selection of the jury had not been completed because the alternate jurors had not as yet been chosen and sworn, we need not reach the question of whether that form of legal necessity existed which would have justified the discharge of the jury had it been completed.
Section 1089 further provides, again in pertinent part, that "Whenever, in the opinion of a judge of a superior court ... the trial is likely to be a protracted one, the court may cause an entry to that effect to be made in the minutes of the court, and thereupon, immediately after the jury is impaneled and sworn, the court may direct the calling of one or more additional jurors, in its discretion, to be known as `alternate jurors.'"
Here, the trial court stated after the swearing of 12 jurors that an alternate juror would be chosen. (5) The general rule is that where a court has indicated that a trial will be conducted with alternate jurors the impanelment of the jury is not deemed complete until the alternates are selected and sworn. (People v. Burns (1948) 84 Cal. App.2d 18, 26 [189 P.2d 868], hg. den., cert. den. 335 U.S. 844 [93 L.Ed. 394, 69 S.Ct. 66].) In Burns, immediately after 12 jurors were sworn, an alternate juror was seated. Before the alternate was sworn, the judge learned that a sworn juror stood accused of a felony in a pending case. Over defense objections the court discharged that juror and replaced him with the alternate who was then sworn. The court denied double jeopardy pleas. On appeal defendants argued that jeopardy attached when the first 12 jurors were sworn and that when the alternate was substituted defendants were placed in jeopardy a second time. In rejecting this argument, the Burns court observed, "If the substitution of the alternate for one of the regular jurors is in accordance with the provisions of Penal Code, section 1089 no question of double jeopardy would arise. This can only be true if the substitution of the alternate for the regular juror does not destroy the unity of the jury. It does not destroy the unity of the jury because the jury is not complete until the alternate is accepted and sworn and the alternate is at all times a potential member of the regular jury." (P. 32.)
The United States Supreme Court cases which consider the question of double jeopardy and jury impanelment do not deal expressly with the matter of alternate jurors and are, accordingly, unhelpful on the point. Most recently in Crist v. Bretz (1978) 437 U.S. 28 [57 L.Ed.2d 24, 98 S.Ct. 2156], however, the high court invalidated a Montana statute which provided that jeopardy did not attach until the first witness was sworn and *854 reaffirmed the rule previously expressed in Downum v. United States (1963) 372 U.S. 734 [10 L.Ed.2d 100, 83 S.Ct. 1033], to the effect that "jeopardy attaches when the jury is empaneled and sworn." (Crist, supra, at p. 35 [57 L.Ed.2d at p. 31]; see United States v. Martin Linen Supply Co. (1977) 430 U.S. 564 [51 L.Ed.2d 642, 97 S.Ct. 1349]; Serfass v. United States (1975) 420 U.S. 377, 388 [43 L.Ed.2d 265, 273-274, 95 S.Ct. 1055]; Bunnell v. Superior Court (1975) 13 Cal.3d 592 [119 Cal. Rptr. 302, 531 P.2d 1086].) Because the high court does not offer a precise definition of the term "jury" or of the phrase "empaneled and sworn," we cannot conclude that the factual context of Crist mandates any result contrary to that which we reach in the case before us.
Defendants argue that the trial court abandoned its original intention to impanel an alternate juror when it announced for the record that the case would proceed the next morning without an alternate. However, despite its remark to this effect, the court apparently did intend to continue its selection of an alternate the next morning. In the trial court's words: "I had called an alternate that we were going to start working on, and because we didn't have any other prospective jurors in the courtroom, I then declared our evening recess with the intention of securing some more. I do think that I made a comment that could be interpreted as saying that, `We're not going to have any alternates because we don't have any jurors available.' If I did make that comment, for whatever effect it may have, it was my intention at that time to see if they could subpoena more jurors in the morning so we could select alternates, as we did yesterday morning."
The foregoing explanation of the trial court's intent is supported, in part, by the fact that there was a second venire of potential alternate jurors awaiting voir dire on the morning of January 17. Impanelment of the additional jurors began within 10 minutes after the court announced that it had discharged Mrs. McQuown, suggesting that the court always intended that an alternate or alternates be selected.
Our conclusion does not rest alone, however, on any such factual speculation. Defendant's argument must fail because the court retains, in these circumstances, the right to change its mind. In People v. Hess (1951) 107 Cal. App.2d 407 [237 P.2d 568] (hg. den. Dec. 6, 1951) four days after twelve jurors were sworn and a request by the district attorney for alternate jurors had been denied, but before any opening statement and prior to the introduction of any evidence, the court excused a sworn juror on grounds of poor health and ordered alternates selected, one of them *855 being substituted for the excused juror. The Hess court held that the selection of the alternates and excusing of the juror "were substantially in accordance with the provisions of section 1089" and "that jeopardy did not attach until after the alternate jurors were sworn...." (P. 426.)
In the instant case, because the jury selection in its entirety was not completed prior to the swearing of the alternate jurors it was within the discretion of the trial court to allow challenges to jurors already sworn. We find significance in the language of section 1068 which provides that a challenge to a juror "must be taken when the juror appears, and before he is sworn to try the cause; but the Court may for cause permit it to be taken after the juror is sworn, and before the jury is completed." (6) This section clearly contemplates that there may be an appreciable interval between the moment when a juror is sworn and the point at which the jury is deemed to be complete. It has long been established that a peremptory challenge may be made to a juror during this interlude if there is good cause for the failure of an earlier exercise of the challenge. (People v. Durrant (1897) 116 Cal. 179, 197 [48 P. 75]; People v. Scoggins (1869) 37 Cal. 676; Witkin, Cal. Criminal Procedure (1963) § 416, p. 416.)
In the present case because the composition of the 12-member panel was to change, there was a valid reason for the court to allow peremptory challenges so that both sides could satisfy themselves to the best of their ability with the final composition of the jury. The court's motivation in permitting use of the remaining peremptory challenges was clear for it said "There is a possibility that somebody might have in the back of their mind that the new juror wouldn't fit in with the total panel. Once it's opened up, I'm going to open it up all the way across the board. You still have as many challenges left as you're entitled." The parties were allowed the remainder of their challenges indicating that what followed was merely a continuation of the jury selection which had been previously commenced. The record indicates that both the defense as well as the prosecution took advantage of the opportunity to remove jurors who had been previously sworn.
(7) The constitutional proscription against double jeopardy serves various important purposes. It prevents the state from having a second opportunity to marshal evidence which it failed to produce at the first opportunity. It reduces the risk that, by effectively lessening the People's burden of proof, an innocent person might be convicted. It protects an accused from the embarrassment, expense and ordeal of a second trial. *856 (People v. Valenti (1957) 49 Cal.2d 199, 209 [316 P.2d 633].) (4b) Clearly, none of these considerations were operative in the present case. Before the alternate jurors were selected and sworn no opening statements had been made. No witness had been sworn. No evidence, oral or documentary, had been introduced. We discern neither any invasion of defendants' constitutional rights nor any resultant prejudice to them in the method of impaneling the jury.
The petitions for writs of habeas corpus and prohibition are denied.
Bird, C.J., Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.