206 Cal.App.3d 762 (1988)
253 Cal. Rptr. 828
THE PEOPLE, Plaintiff and Respondent,
v.
VERNON LEE BURGESS, Defendant and Appellant. In re VERNON LEE BURGESS on Habeas Corpus.
Docket Nos. H002975, H003998.
Court of Appeals of California, First District, Division Five.
December 16, 1988.
*764 COUNSEL
Jackson S. Wallace, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.
John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald S. Matthias and Brenda P. Reyes, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[]]
OPINION
HANING, J.
Vernon Lee Burgess appeals his conviction by jury trial of possession of stolen property (Pen. Code, § 496);[1] grand theft (§§ 484/487, subd. 3); offering to sell PCP (Health & Saf. Code, § 11379.5); and robbery (§ 211). (1a) His primary contention is that the substitution of a regular juror with an alternate constituted double jeopardy. He has also petitioned for habeas corpus, claiming that his trial counsel's failure to formally enter a plea of former jeopardy (§ 1016, subd. 5) deprived him of the effective assistance of counsel. We affirm the judgment and deny the petition.
Since appellant does not attack the sufficiency of the evidence, we need not set forth the circumstances of the crimes in great detail. Basically, appellant was positively identified as the person who came into a Stop N' Go convenience store on March 17, 1986, and took a bottle of liquor without paying. When the clerk tried to stop him, appellant shoved the clerk to the floor and fled. He also sold a stolen video cassette recorder and stolen automobile to undercover officers participating in a "sting" operation. Finally, he arranged for undercover officers to purchase approximately one gram of PCP.
The principal assignment of error relates to the action of the trial court in allowing the prosecutor to exercise a peremptory challenge after the jury was empaneled and sworn, and replacing the peremptorily challenged juror with an alternate. Immediately after the jury and alternates were sworn, *765 juror number five, Mrs. Moreno, informed the court that she and her husband were pursuing a lawsuit against the Santa Clara County Planning Department over the proposed development of some land. Mrs. Moreno indicated to the court that she was raising the issue because she was not earlier questioned on the subject, and because she was unsure whether it made any difference in her ability to serve as a juror.
Following an off-the-record conference between counsel and the court, the prosecutor examined Mrs. Moreno. She indicated she would have difficulty being fair and impartial if anything in the trial concerned the Planning Department, but her feelings were "pretty much limited to that department." She said she had never had any dealings with the District Attorney's Office, the Sheriff's Department or any other law enforcement agency except small claims court and the police when she reported a burglary. The court then recessed the proceedings for a few minutes.
Mrs. Moreno's husband approached the prosecutor as the jury was leaving the courtroom. After he departed, the prosecutor described what had occurred. The prosecutor stated, "Mr. Moreno came up to me and said I looked like the man who prosecuted him seven years ago for doing something at the flea market. And I have no recollection of that."
The prosecutor asked the court to substitute one of the alternates for Mrs. Moreno because of her "obvious bias." Defense counsel objected. The court initially indicated a willingness to reopen jury selection if the parties so stipulated; however, defense counsel refused to enter into such a stipulation.
The court denied the prosecutor's motion to excuse Mrs. Moreno for cause, specifically finding that no cause had been established. The court acknowledged that jeopardy had attached, but reopened jury selection "without removing jeopardy" to permit each party to exercise a peremptory challenge. When defense counsel objected to reopening jury selection, the court stated that reopening was "[w]ith respect to seat no. 5 [juror Moreno] only.... I am permitting [the People] to use a peremptory against Mrs. Moreno with the understanding that Mrs. Moreno's seat would not be filled by another panel member but rather would be filled by an alternate." The prosecutor then used a peremptory challenge to excuse Mrs. Moreno and an alternate was seated in her place. Appellant did not exercise a challenge.
Appellant contends this procedure resulted in his conviction in violation of his constitutional right against double jeopardy. (U.S. Const., Amend. V; Cal. Const., art. I, § 15.) He argues that he was forced to face two juries  the first, which was empaneled and sworn before the trial court reopened *766 jury selection, and the second, consisting of eleven of the original jurors plus the alternate substituted for Mrs. Moreno.
The People challenge appellant's right to raise this issue, claiming he failed to interpose a plea of former jeopardy at trial. (See In re Henry C. (1984) 161 Cal. App.3d 646, 648-653 [207 Cal. Rptr. 751]; People v. Ferguson (1982) 129 Cal. App.3d 1014, 1023 [181 Cal. Rptr. 593].) Although the record is not as precise as it could be, it is subject to interpretation in appellant's favor in support of a claim that the jeopardy issue was raised at trial. However, in order to preserve his double jeopardy claim, appellant has filed a petition for habeas corpus, contending that his trial counsel's failure to assert a plea of double jeopardy deprived him of a crucial defense and constituted inadequate assistance of counsel. Therefore, we proceed to address the issue on its merits. (See In re Mendes (1979) 23 Cal.3d 847, 850-851 [153 Cal. Rptr. 831, 592 P.2d 318].)

I
(2) We emphasize that this is not a case involving an empaneled juror who was excused for cause and replaced with an alternate. Such a circumstance "does not offend constitutional proscriptions." (People v. Collins (1976) 17 Cal.3d 687, 691 [131 Cal. Rptr. 782, 552 P.2d 742]; People v. Warren (1986) 176 Cal. App.3d 324, 326 [221 Cal. Rptr. 768]; People v. Taylor (1961) 189 Cal. App.2d 490, 494-495 [11 Cal. Rptr. 480].) (1b) This is a case where the trial court permitted the prosecution to peremptorily challenge a specific juror and substitute an alternate after the entire jury, including alternates, had been empaneled and sworn. Such practice is clearly prohibited by statute. Section 1068 prohibits the exercise of peremptory challenges after jury selection has been completed. (In re Mendes, supra, 23 Cal.3d at p. 855; People v. Johnson (1988) 200 Cal. App.3d 1553, 1561 [247 Cal. Rptr. 767]; People v. Burns (1948) 84 Cal. App.2d 18, 31 [189 P.2d 868].) Once jury selection has been completed, a juror may be discharged only for cause. (Ibid.; People v. Hamilton (1963) 60 Cal.2d 105, 124-126 [32 Cal. Rptr. 4, 383 P.2d 412]; §§ 1089, 1123.) (3) The absence of cause for discharge of juror Moreno is established by the trial court's finding, by which we are bound (People v. Fields (1983) 35 Cal.3d 329, 356 [197 Cal. Rptr. 803, 673 P.2d 680]; People v. Linden (1959) 52 Cal.2d 1, 2 [338 P.2d 397]), and confirmed by the fact that the Attorney General does not challenge that finding, or contend that such cause existed at the time jury selection was reopened.
Thus, it is clear that the trial court erred in reopening jury selection to permit the prosecution's peremptory challenge. (4) It is also apparent that no actual harm or prejudice from the error has been raised or demonstrated. *767 However, where the jeopardy clause applies, its bar is absolute (United States v. DiFrancesco (1980) 449 U.S. 117, 131 [66 L.Ed.2d 328, 341-342, 101 S.Ct. 426]; Burks v. United States (1977) 437 U.S. 1, 11, fn. 6 [57 L.Ed.2d 1, 9, 98 S.Ct. 2141]), and appellant contends that the unauthorized juror substitution placed him twice in jeopardy.
(5) We think this contention is best resolved by reference to the basic policy reasons underlying the protections offered by the jeopardy clause, in light of the rule that jeopardy attaches, both by federal and state constitutional mandate, when the jury is empaneled and sworn. (Crist v. Bretz (1977) 437 U.S. 28, 38 [57 L.Ed.2d 24, 33, 98 S.Ct. 2156]; Curry v. Superior Court (1970) 2 Cal.3d 707, 712 [87 Cal. Rptr. 361, 470 P.2d 345].) In California, the jury is empaneled and sworn when all regular and alternate jurors are selected and sworn to try the case. (People v. Armendariz (1984) 37 Cal.3d 573, 580-581 [209 Cal. Rptr. 664, 693 P.2d 243]; In re Mendes, supra, 23 Cal.3d at p. 853; People v. Hess (1951) 107 Cal. App.2d 407, 425-426 [237 P.2d 568]; People v. Burns, supra, 84 Cal. App.2d at pp. 24-26.)
(6) The jeopardy clause has been interpreted as affording three basic protections or guarantees: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (North Carolina v. Pearce (1969) 395 U.S. 711, 717 [23 L.Ed.2d 656, 664-665, 89 S.Ct. 2072], fns. omitted; Justices of Boston Municipal Court v. Lydon (1984) 466 U.S. 294, 306-307 [80 L.Ed.2d 311, 323-324, 104 S.Ct. 1805]; Ohio v. Johnson (1984) 467 U.S. 493, 498 [81 L.Ed.2d 425, 433, 104 S.Ct. 2536].) It also protects against retrial after the improper declaration of a mistrial. (Justices of Boston Municipal Court v. Lydon, supra, at p. 307, fn. 6 [80 L.Ed.2d at p. 324]; accord; People v. Upshaw (1974) 13 Cal.3d 29, 32-33 [117 Cal. Rptr. 668, 528 P.2d 756]; People v. Compton (1971) 6 Cal.3d 55, 61 [98 Cal. Rptr. 217, 490 P.2d 537]; Curry v. Superior Court, supra, 2 Cal.3d at pp. 713-714.)
The policy reasons underlying these protections were outlined in Green v. United States (1957) 355 U.S. 184, 187-188 [2 L.Ed.2d 199, 204, 78 S.Ct. 221, 61 A.L.R.2d 1119]: "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (See United States v. DiFrancesco, supra, 449 U.S. at p. 129 [66 L.Ed.2d at pp. 340-341]; Crist v. Bretz, supra, 437 U.S. at p. 35 [57 L.Ed.2d at p. 31]; Benton v. Maryland *768 (1969) 395 U.S. 784, 795-796 [23 L.Ed.2d 707, 716-717, 89 S.Ct. 2056]; accord, Curry v. Superior Court, supra, 2 Cal.3d at p. 717; In re Mendes, supra, 23 Cal.3d at pp. 855-856; People v. Tideman (1962) 57 Cal.2d 574, 585 [21 Cal. Rptr. 207, 370 P.2d 1007].)
(1c) When the improper juror substitution in the instant case is measured against constitutional protections and policies, it is readily apparent that no meaningful deprivation or violation of those protections or policies occurred. There was no former conviction or acquittal, and no unauthorized mistrial. Although the erroneous substitution of a regular juror with an alternate may be prejudicial under many circumstances, it is not the equivalent of a mistrial. (See People v. Burns, supra, 84 Cal. App.2d at pp. 32-33.)
Appellant relies on People v. Young (1929) 100 Cal. App. 18 [279 P. 824]. In Young, as in the instant case, 12 regular and 2 alternate jurors were empaneled and sworn. Reading of the information was waived, and "the trial judge stated the case to the jury." (Id., at p. 19.) The trial was then recessed to the following day. When the trial resumed, but before the taking of any evidence, the prosecutor was permitted to exercise a peremptory challenge to one of the regular jurors. For reasons not explained in the decision, a person other than an alternate was then called from the venire and empaneled and sworn in place of the discharged regular juror. On appeal, the Young court concluded that the defendant had been twice in jeopardy.
In People v. Burns, supra, 84 Cal. App.2d 18, after 12 regular jurors were selected and sworn, the court advised counsel that alternates would also be selected. Before the alternates were selected the trial court erroneously discharged one of the regular jurors. Alternate jurors were then selected and one of them was substituted for the discharged regular juror. The Court of Appeal concluded that the error in discharging the regular juror did not place the defendants twice in jeopardy, but was an error of law subject to harmless error analysis. As one of the grounds for distinguishing the Young decision, Burns relied on the fact that the substitute juror in Young was selected not from the alternates, but from the general venire. This is also sufficient reason to distinguish Young from the instant case.
Alternate jurors are selected at the same time, are subject to the same qualifications and take the same oath as regular jurors. They hear the same evidence and are bound by the same rules and instructions as the regular jurors, and until the verdict is rendered they are at all times available and qualified to participate as regular jurors. (§ 1089.) Indeed, as we previously noted, jury selection is not complete until the alternates have been selected *769 and sworn. (People v. Armendariz, supra, 37 Cal.3d at pp. 580-581; In re Mendes, supra, 23 Cal.3d at p. 853; People v. Hess, supra, 107 Cal. App.2d at pp. 425-426; People v. Burns, supra, 84 Cal. App.2d at pp. 25-26.)
Another case similar in principle, but factually distinguishable is People v. Hamilton, supra, 60 Cal.2d 105, a capital case where the defendant received the death penalty. During the penalty phase the trial court erroneously discharged a regular juror who was apparently leaning toward life imprisonment, and substituted an alternate. The jeopardy issue was not discussed, but the Supreme Court found the error to be prejudicial under those circumstances. "While it has been said repeatedly ... that a defendant is not entitled to be tried by a jury composed of any particular individuals, but only by a jury composed of qualified and impartial jurors, this does not mean that either side is entitled to have removed from the panel any qualified and acting juror who, by some act or remark made during the trial, has given the impression that he favors one side or the other. It is obvious that it would be error to discharge a juror for such a reason, and that, if the record shows (as it does here), that, based on the evidence, that juror was inclined toward one side, the error in removing such a juror would be prejudicial to that side. If it were not, the court could `load' the jury one way or the other." (Id., at p. 128.)
Hamilton is clearly distinguishable, but instructive. The Supreme Court analyzed the error for prejudice and, not surprisingly, found that it existed under those circumstances, and reversed and remanded for a new penalty trial. By contrast, the error in the instant case occurred immediately after the jury selection had been completed, but before opening statements or the receipt of any evidence. (See, e.g., In re Mendes, supra, 23 Cal.3d at p. 856; People v. Hess, supra, 107 Cal. App.2d at p. 425; People v. Burns, supra, 84 Cal. App.2d at p. 33.) In light of the foregoing, we conclude that the error herein did not result in double jeopardy, and is subject to harmless error analysis.

II, III[*]
.... .... .... .... .... .

*770 DISPOSITION
The judgment is affirmed. The petition for habeas corpus is denied.
Low, P.J., and King, J., concurred.
Appellant's petition for review by the Supreme Court was denied March 22, 1989.
NOTES
[] Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication except for parts II and III.
[1] Unless otherwise indicated, all further statutory references are to the Penal Code.
[*] See footnote, ante, page 762.