124 Cal.Rptr.2d 765 (2002)
101 Cal.App.4th 1256
The PEOPLE, Plaintiff and Respondent,
v.
Jason Lamont TROTTER, Defendant and Appellant.
No. B149459.
Court of Appeal, Second District, Division Seven.
September 4, 2002.
As Modified September 24, 2002.
Review Granted November 20, 2002.
Review Dismissed May 14, 2003.
*766 Carl M. Hancock, under appointment by the Court of Appeal, Chula Vista, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Marc E. Turchin, Supervising Deputy Attorney General, and Jeffrey B. Kahan, Deputy Attorney General, for Plaintiff and Respondent.
JOHNSON, Acting P.J.
Jason Lamont Trotter appeals from the judgment entered following a jury trial resulting in his convictions of second degree robbery and attempted second degree *767 robbery, with findings of personal use of a firearm.[1] Appellant contends the trial court abused its discretion when it discharged a holdout juror. We agree, and further agree the error was prejudicial. However, we do not agree with appellant's contention double jeopardy bars retrial in this case. Accordingly, we reverse the judgment and remand for new trial.

FACTS AND PROCEEDINGS BELOW
On September 18, 2000, Peralta, his cousin and two friends were driving in Peralta's Oldsmobile Cutlass in the Jordan Downs Housing Development. Appellant and a companion approached and, at gun-point, took the men's money, Peralta's radio and a speaker box and two amplifiers Peralta had in his trunk.
On October 20, 2000, appellant and six or seven other youths took $180 and a wallet from Roberto Cavistan as Cavistan was entering his apartment in the Jordan Downs Housing Development. During the robbery, one of the youths pointed a revolver at Cavistan. Cavistan's daughter observed the robbery and telephoned the police. Within minutes, Los Angeles Police Officer Peter Bueno and his partner chased seven youths they saw coming from the area of Cavistan's apartment. The youths dispersed during the pursuit, but Bueno apprehended appellant as he pounded on an apartment door seeking entry. When Bueno handcuffed him appellant said, "What the fuck you putting handcuffs on me? I wasn't even over there." Another officer saw appellant with other youths minutes earlier hunched over $50 in cash in a bandana. Cavistan was threatened and did not identify appellant during the trial.
During jury deliberations, the jury fore person sent out three inquires to the court:
"We, the jury in the above entitled action, request the following: [¶] Advice/instruction/direction from the judge about resolving a hung jury. [¶] Most of us are convinced beyond a reasonable doubt, but the opposition is from a position of `not enough facts to convince beyond a shadow of a doubt,' and is willing to leave it at thata hung jury. The majority does not want to leave it at that.
"May [sic] members of the jury ask questions of the judge (in presence of all jurors) about concerns they may have regarding any aspect of the deliberations thus far?
"We are at an impasse. Some of the majority feels there is a failure to deliberate and possibly other factors that are impacting the process. Maybe a clarification of the word `deliberation' is necessary."
The court read the foreperson's inquiries and discussed them with counsel. In open court the court then asked the jury foreperson to explain the jury's questions.
The foreperson replied: "I think that what that means is we feel that the central issues that are important to us are not being addressed by the opposing view point."
The court asked if in the foreperson's opinion there was a disagreement as to the facts, as distinguished from a failure to discuss the evidence and find the facts from the evidence. The foreperson replied, "[A] little bit of both." The foreperson added the minority "view" was relying upon "[s]uppositions and generalities coming in from life experience ... perhaps." The foreperson said the minority "view" had some doubt about the evidence, and then these "other factors come in."
*768 The court defined "deliberation" for the jury. Then the court inquired of all the jurors if what was going on was a failure to deliberate. The court specified it wished just a yes or no answer from each juror. Four of the jurors replied he or she was not certain or did not know. Three jurors said no. Six jurors said yes.
The court sent the remaining eleven jurors into the jury room and inquired of the foreperson alone. The court inquired how many jurors were involved. The foreperson said there was only one dissenting juror. The court observed the jury had been deliberating for approximately a day and a half. The court inquired how many ballots were taken.
The foreperson replied the jury had taken one formal ballot. But the vote had not changed since almost from the very beginning of deliberations. Two of the three persons who had originally voted not guilty had changed their votes to guilty. But for seven or eight hours, just the one minority juror remained in favor of a not guilty verdict. The foreperson asked to relate examples to the court to illustrate the one juror's failure to deliberate.
The court declined. The court said it did not want to unduly interfere in deliberations. The court explained it was attempting to determine if there was a failure to deliberate or an honest difference of opinion. The court commented the foreperson had already indicated his opinion there was a failure to deliberate in good faith.
The foreperson said: "I believe so. Although the person in question does not believe that." The foreperson said, "She's emphatically opposed to that idea." The foreperson added: "So what it comes down to islet's seethis one person has flipflopped on several issues."
The court interrupted and asked which juror was the minority juror. The foreperson replied Juror No. 12. The foreperson said deliberations were at a standstill and there was no reason for further deliberations if Juror No. 12 remained on the jury. The foreperson also said other jurors could not persuade Juror No. 12 to tell them what was wrong with the majority's logic.
The court asked, "She's not sharing with you what her thoughts are?" The foreperson replied: "Her thoughts are the evidence is too weak. That's it." The court said: "[Y]ou've just demonstrated by crossing your arms across your chest emphatically. But she's not going through each element by element?" The foreperson said: "She won't do that. We've gone though it at least 20 times." The court said, "And she won't participate in that situation." The foreperson replied, "Not to a reasonable degree."
The court then questioned Juror No. 12 out of the presence of the other jurors. The court told Juror No. 12 it was inquiring whether the juror was participating in deliberations. In reply to each of the court's inquiries, the juror repeated she was deliberating.
The court and counsel then discussed the issue out of the presence of the jurors. Defense counsel took the position there was no ground for dismissing the juror because the impasse was the result of a difference of opinion as to the strength of the evidence. The prosecutor and court commented they had concluded from the foreperson's comments the juror was not deliberating.
The court had Juror No. 12 return to court and excused her. The court substituted in one of the alternate jurors for Juror No. 12. The jury recommenced deliberations at 2:07 p.m. that afternoon. *769 Later in the afternoon, the jury returned with a guilty verdict.

DISCUSSION

I. THE TRIAL COURT ERRED IN DISMISSING THE HOLDOUT JUROR WITHOUT GOOD CAUSE.

The People agree with appellant's claim the court improperly dismissed Juror No. 12. So do we.
"The circumstance that a juror does not deliberate well or relies upon faulty logic or analysis does not constitute a refusal to deliberate and is not a ground for discharge. Similarly, the circumstance that a juror disagrees with the majority of the jury as to what the evidence shows, or how the law should be applied to the facts, or the manner in which deliberations should be conducted does not constitute a refusal to deliberate and is not a ground for discharge. A juror who has participated in deliberations for a reasonable period of time may not be discharged for refusing to deliberate, simply because the juror expresses the belief that further discussion will not alter his or her views."[2]
In this case, the juror participated in deliberations for a number of hours. She flip-flopped on several issues, then took a fixed position the evidence did not persuade her appellant was guilty. A more concrete demonstration of misconduct than is found here is required before the court may dismiss a juror for a failure to deliberate.[3] Moreover, removing the only juror who was unpersuaded the evidence warranted a guilty vote was clearly prejudicial to appellant and requires reversal of the judgment.[4]
The issue remains whether principles of double jeopardy bar retrial.

II. PRINCIPLES OF DOUBLE JEOPARDY DO NOT BAR RETRIAL IN THIS CASE.

Appellant argues the court's improper substitution of an alternate for an original juror was without "legal necessity" or his consent and as a result double jeopardy bars retrial. Appellant likens the improper substitution of the juror with an alternate to declaring a mistrial and dismissing the jury without legal necessity, a situation which established law holds bars retrial on double jeopardy grounds.[5] The People argue what occurred in this case was not the equivalent of an erroneous declaration of mistrial and dismissal of the jury prior to verdict. Instead, they argue substitution of the juror without legal cause constituted trial error which appellant succeeded in having reversed on appeal, a situation in which double jeopardy is inapplicable.
Both the United States and California Constitutions prohibit placing a defendant twice in jeopardy for the same offense.[6] The double jeopardy clause *770 "protect[s] an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."[7] Double jeopardy also prevents the prosecution from gaining an advantage to supply evidence it did not present in the first proceeding by allowing it to do so in a second proceeding.[8]
Jeopardy initially attaches when a court impanels and swears in the jury, including original and alternate jurors.[9] Penal Code section 1089 authorizes the substitution of an alternate juror before or after final submission of the case to the jury on a showing of good cause.[10] If a court substitutes an alternate juror for an original juror for good cause, and thus in compliance with Penal Code section 1089, no question of double jeopardy arises.[11]
On the other hand, "discharge of that jury without a verdict is equivalent in law to an acquittal and bars a retrial, unless the defendant consented thereto or legal necessity required it." [12] In California, "legal necessity" for a mistrial "typically arises from an inability of the jury to agree [citations] or from physical causes beyond the control of the court; [citations], such as the death, illness, or absence of judge or juror [citations] or of the defendant [citations]. A mere error of law or procedure, however, does not constitute legal necessity. [Citations.]"[13]
*771 Three appellate decisions have discussed the double jeopardy consequences of dismissing a juror without good cause.
In People v. Young,[14] jury selection ended in the morning with the selection of 12 jurors and two alternates. In the afternoon, the trial court discovered one of the original jurors was a social friend of a defense witness. Over defense objection, the court allowed the prosecution to exercise a peremptory challenge to excuse the juror. The replacement juror was not one of the alternates, but was instead called from the general venire. The appellate court held there was no good cause under Penal Code section 1089 to reject the original juror. The court also found error in permitting the prosecutor to exercise a preemptory challenge after the jury had already been empanelled and sworn.[15] "The condition of this juror's mind was not such as to entitle the People to reject him for cause at any time...."[16] The court also found it "equally clear that the jury having been completed and regularly impaneled and sworn before the peremptory challenge was allowed, this appealing defendant was in jeopardy."[17] The court held double jeopardy had attached prior to removing the original juror and replacing him with a juror from the general venire. Thus, proceeding to trial with this reformulated jury, including a juror not selected by him, placed the defendant twice in jeopardy. Accordingly, the court reversed the defendant's conviction and ordered him discharged.[18]
The court in People v. Burns[19] reached the opposite conclusion. The Burns court held double jeopardy did not apply because, although an original juror had been excused without cause, a previously selected alternate replaced the excused juror. In Burns, after the parties selected 12 jurors and one alternate, the court discovered one of the original jurors had criminal charges pending against him in the same court. Over defense objection, the trial court dismissed the juror even though the juror claimed he could remain impartial. After the jury returned a guilty verdict, the defendant appealed, claiming the improper discharge of the juror placed him before two different juries which in turn placed him twice in jeopardy.[20]
The appellate court first conceded the trial court's error in excusing the juror in this case constituted an irregularity in the proceedings, and thus "not in the purview of section 1089."[21] However, the appellate court concluded the alternate juror was part of the same jury and therefore the defendant had not been subjected to two different juries and double jeopardy did not apply to bar retrial.[22] The court reasoned, "a verdict by 12 jurors, one of whom was originally an alternate juror, is the verdict of the jury originally sworn to try the case. If the substitution of the *772 alternate for one of the regular jurors is in accordance with the provisions of Penal Code, section 1089 no question of double jeopardy would arise. This can only be true if the substitution of the alternate for the regular juror does not destroy the unity of the jury. It does not destroy the unity of the jury because the jury is not complete until the alternate is accepted and sworn and the alternate is at all times a potential member of the regular jury. The requirement of trial by one jury is satisfied, where a jury composed of 12 regular jurors and one or more alternates has been impaneled, if the verdict is returned by 12 jurors sworn to try the case although one or more alternates may be included in the jury which renders the verdict. If this is true where the substitution has been made in the manner provided by Penal Code, section 1089 it must be true where it has been made in an irregular manner. The same number of jurors sworn to try the case in the same way are involved in either instance. Either the substitution of an alternate for a regular juror destroys the unity of the jury or it does not. If it does not destroy the unity of the jury as is settled by the Peete and Howard[23] cases, then the substitution of an alternate for a regular juror in an unauthorized manner does not place the defendant twice in jeopardy but is merely an error of law which should not lead to a reversal in the absence of a showing that it has resulted in a miscarriage of justice...."[24]
The court distinguished the decision in Young on the ground the selection of the substitute juror from the general venire destroyed jury unity and effectively created separate juries.[25] Employing a harmless error analysis, the Burns court observed "[t]here is no claim of insufficiency of the evidence; there is no claim of error in the admission or rejection of evidence or in the giving or refusing of instructions .... We are satisfied that no miscarriage of justice resulted from the irregularity complained of."[26] Accordingly, the court affirmed the defendant's conviction.
The court in People v. Burgess[27] also found double jeopardy inapplicable. It so found even though it concluded the trial court's action in reopening voir dire to permit the prosecution to exercise a preemptory challenge after the jury and alternates had been sworn, "clearly prohibited by statute."[28] In Burgess after selection of original and alternate jurors, an original juror informed the; court she was biased against a city department, but her feelings were "pretty much limited to that department." The trial court observed this was an insufficient ground to *773 remove the juror for cause. Nevertheless, the court "reopened" jury selection over defense objection to allow both parties to exercise a peremptory challenge. The prosecutor used his challenge to excuse the juror in question, and an alternate replaced the juror.[29] On appeal, the defendant argued discharge of the juror placed him twice in jeopardy. The appellate court held the use of a peremptory challenge after jury selection was improper because no good cause existed to excuse the juror under Penal Code section 1089. The court observed double jeopardy protects against a second prosecution or multiple punishments for the same offense after acquittal and conviction, as well as against retrial after the improper declaration of a mistrial.[30] Comparing the improper juror substitution with those situations, the court held there was "no meaningful deprivation or violation of those protections or policies.... There was no former conviction or acquittal, and no unauthorized mistrial. Although the erroneous substitution of a regular juror with an alternate may be prejudicial under many circumstances, it is not the equivalent of a mistrial."[31] Agreeing with Burns, the court held "error in discharging the regular juror did not place the defendant twice in jeopardy, but was an error of law subject to harmless error analysis."[32]
Like Burns, the Burgess courts distinguished Young on the ground the substitute juror in Young came from the general venire and was not a regularly selected alternate.[33]
The California Supreme Court has not expressly addressed the issue whether double jeopardy bars retrial when an original juror is improperly replaced with an alternate juror over a defendant's objection.[34] *774 Although the court in People v. Hamilton[35] did not address the double jeopardy issue, it is instructive because it presented a situation analogous to the one in the case at bar. In Hamilton a juror expressed misgivings about the death penalty and was dismissed during deliberations and replaced with an alternate. The Hamilton court found the "dismissal of this juror was error and in violation of the restrictions imposed by section 1089...."[36] The court further found the juror's "disqualification could only be beneficial to the prosecution and prejudicial to the defense."[37] The court thus reversed the judgment of death and remanded the matter for a retrial of the penalty phase.[38]
Similarly, in People v. Cleveland[39] the Supreme Court found erroneously excusing a holdout juror during deliberations and replacing him with an alternate to be prejudicial error. Citing its decision in People v. Hamilton, the Cleveland court found the error thus required reversal of the judgment. The court did not consider possible double jeopardy implications of the error.[40]
We are persuaded when a trial court errs in applying Penal Code section 1089 and a juror is improperly removed, the unity of the originally selected jury is not destroyed-provided the replacement juror is a regularly selected alternate. When a regularly selected alternate replaces the dismissed juror it will not as a general rule impact on a defendant's right to a chosen jury.[41] This case is such an example. Here the trial court erroneously concluded the holdout juror was unable to perform her duties as a juror within the meaning of Penal Code section 1089.[42] The court replaced this juror with a regularly selected alternate. The alternate observed the same proceedings, took the same oath, and was bound by the same orders and admonitions of the trial court.[43] While an improper discharge of the entire jury would invoke the bar of double jeopardy, the improper discharge of this one juror for allegedly failing to deliberate did *775 not discharge the jury as a whole prior to verdict, and thus does not implicate double jeopardy principles, where, as here, the substituted juror is a duly sworn alternate selected with the other jurors before trial.[44] The substituted alternate was part of the same jury, and thus the particular tribunal chosen to try appellant remained complete.[45] For these reasons, the substitution was not equivalent to an erroneous declaration of a mistrial and discharge of the entire jury prior to verdict because the defendant's selected jury remained intact until verdict. Instead, replacing the juror with an alternate without good cause under Penal Code section 1089 was in this case a form of trial error. Accordingly, the error is subject to harmless error analysis.[46]
Appellant has appealed his conviction, and has successfully demonstrated such error was prejudicial, requiring reversal. In this circumstance double jeopardy does not bar retrial.[47]
Double jeopardy's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside because of trial error.[48] "While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the Ball principle are the implications of that principle for the sound administration of Justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous *776 as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest...."[49]

DISPOSITION
The judgment is reversed and the cause remanded for new trial.
We concur: WOODS, and PERLUSS, JJ.
NOTES
[1] Penal Code sections 211, 664/211, 12022.53, subdivision (b).
[2] People v. Cleveland (2001) 25 Cal.4th 466, 485, 106 Cal.Rptr.2d 313, 21 P.3d 1225.
[3] People v. Cleveland, supra, 25 Cal.4th 466, 486, 106 Cal.Rptr.2d 313, 21 P.3d 1225.
[4] People v. Hamilton (1963) 60 Cal.2d 105, 128, 32 Cal.Rptr. 4, 383 P.2d 412, disapproved on other grounds in People v. Daniels (1991) 52 Cal.3d 815, 866, 277 Cal.Rptr. 122, 802 P.2d 906 and People v. Morse (1964) 60 Cal.2d 631, 648-649, 36 Cal.Rptr. 201, 388 P.2d 33.
[5] Crist v. Bretz (1978) 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24; Curry v. Superior Court (1970) 2 Cal.3d 707, 713-714, 87 Cal. Rptr. 361, 470 P.2d 345.
[6] United States Constitution 5th Amendment; California Constitution, article I, section 15; Benton v. Maryland (1969) 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 [5th Amendment applies to states via the 14th Amendment].
[7] United States v. DiFrancesco (1980) 449 U.S. 117, 127-128, 101 S.Ct. 426, 66 L.Ed.2d 328, citing Green v. United States (1957) 355 U.S. 184, 187-188, 78 S.Ct. 221, 2 L.Ed.2d 199.
[8] United States v. DiFrancesco, supra, 449 U.S. 117, 128, 101 S.Ct. 426, 66 L.Ed.2d 328.
[9] United States v. DiFrancesco, supra, 449 U.S. 117, 128, 101 S.Ct. 426, 66 L.Ed.2d 328; see Crist v. Brett, supra, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 ["The reason for holding that jeopardy attaches when the jury is empanelled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury." Thus, the Court found unconstitutional Montana's law providing jeopardy did not attach until the first witness was sworn.]; In re Mendes (1979) 23 Cal.3d 847, 853, 153 Cal.Rptr. 831, 592 P.2d 318; Curry v. Superior Court, supra, 2 Cal.3d 707, 712, 87 Cal.Rptr. 361, 470 P.2d 345.
[10] Penal Code section 1089 provides in pertinent part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors."
[11] In re Mendes, supra, 23 Cal.3d 847, 853, 153 Cal.Rptr. 831, 592 P.2d 318, citing People v. Burns (1948) 84 Cal.App.2d 18, 33, 189 P.2d 868; People v. Collins (1976) 17 Cal.3d 687, 696-697, 131 Cal.Rptr. 782, 552 P.2d 742.
[12] Curry v. Superior Court, supra, 2 Cal.3d 707, 712, 87 Cal.Rptr. 361, 470 P.2d 345; Green v. United States, supra, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 [requiring defendant's consent or legal necessity protects against the government discontinuing trial when it appears the jury may not convict].
[13] Curry v. Superior Court, supra, 2 Cal.3d 707, 713-714, 87 Cal.Rptr. 361, 470 P.2d 345.
[14] People v. Young (1929) 100 Cal.App. 18, 279 P. 824.
[15] People v. Young, supra, 100 Cal.App. 18, 19, 21, 279 P. 824.
[16] People v. Young, supra, 100 Cal.App. 18, 21, 279 P. 824.
[17] People v. Young, supra, 100 Cal.App. 18, 23, 279 P. 824.
[18] People v. Young, supra, 100 Cal.App. 18, 23-24, 279 P. 824.
[19] People v. Burns, supra, 84 Cal.App.2d 18, 189 P.2d 868.
[20] People v. Burns, supra, 84 Cal.App.2d 18, 20-22, 189 P.2d 868.
[21] People v. Burns, supra, 84 Cal.App.2d 18, 29, 189 P.2d 868.
[22] People v. Burns, supra, 84 Cal.App.2d 18, 25-26, 189 P.2d 868.
[23] People v. Peete (1921) 54 Cal.App. 333, 366, 202 P. 51 [ill juror replaced for cause with alternate was trial "by a jury of twelve in every essential particular"]; People v. Howard (1930) 211 Cal. 322, 295 P. 333 [replacing juror with an alternate just prior to deliberations held to be irregular yet ultimately affirmed the judgment of conviction as modified].
[24] People v. Burns, supra, 84 Cal.App.2d 18, 32-33, 189 P.2d 868, cited with approval in In re Mendes, supra, 23 Cal.3d 847, 853, 855, 153 Cal.Rptr. 831, 592 P.2d 318 [rejecting the defendant's double jeopardy challenge where trial court had permitted the prosecutor to peremptorily challenge a sworn juror during selection of alternates, reasoning "jury selection in its entirety was not completed prior to the swearing of the alternate jurors," and thus jeopardy had not yet attached].
[25] People v. Burns, supra, 84 Cal.App.2d 18, 31, 189 P.2d 868.
[26] People v. Burns, supra, 84 Cal.App.2d 18, 33, 189 P.2d 868.
[27] People v. Burgess (1988) 206 Cal.App.3d 762, 253 Cal.Rptr. 828.
[28] People v. Burgess, supra, 206 Cal.App.3d 762, 766, 253 Cal.Rptr. 828.
[29] People v. Burgess, supra, 206 Cal.App.3d 762, 764-765, 253 Cal.Rptr. 828.
[30] People v. Burgess, supra, 206 Cal.App.3d 762, 766-767, 253 Cal.Rptr. 828.
[31] People v. Burgess, supra, 206 Cal.App.3d 762, 768, 253 Cal.Rptr. 828, italics added.
[32] People v. Burgess, supra, 206 Cal.App.3d 762, 768, 253 Cal.Rptr. 828. The Burgess court's conclusion is somewhat troubling given its factual circumstances. There the erroneous substitution of the original juror was not the result of a good faith error in applying Penal Code section 1089. Instead, and although the trial court acknowledged the juror's bias was an insufficient ground to remove the juror under Penal Code section 1089, it "permitted the prosecution to peremptorily challenge a specific juror and substitute an alternate after the entire jury, including the alternates, had been empanelled and sworn." (People v. Burgess, supra, 206 Cal.App.3d 762, 766, 253 Cal.Rptr. 828.) The appellate court expressly found "[s]uch practice [] clearly prohibited by statute." (Ibid.) Nevertheless, the appellate court found double jeopardy did not apply.

We question whether double jeopardy should not bar retrial when a trial court alters the composition of the jury without legal necessity, or good cause, and also not as a result of a good faith error in applying Penal Code section 1089, but for some other impermissible reason. A reformulated jury under these circumstances may well impinge on a defendant's interest in retaining a chosen jury (Crist v. Bretz, supra, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24) and the right to a fair and impartial jury rather than one selected by the prosecution (People v. Young, supra, 100 Cal.App. 18, 23, 279 P. 824). However, this combination of factual circumstances is not present in the case at bar. Accordingly, we need not, and do not, resolve these issues.
[33] People v. Burns, supra, 84 Cal.App.2d 18, 31-32, 189 P.2d 868; People v. Burgess, supra, 206 Cal.App.3d 762, 768, 253 Cal.Rptr. 828.
[34] See People v. Collins, supra, 17 Cal.3d 687, 696-697, 131 Cal.Rptr. 782, 552 P.2d 742 ["Defendant's contention that he was placed twice in jeopardy by the substitution of an alternate juror without legal necessity or his consent need not be addressed. The discharge of the juror for good cause amounted to a legal necessity."] Finding the error in failing to instruct the reconstituted jury to begin deliberations anew to be harmless, the court affirmed the defendant's judgment of conviction.
[35] People v. Hamilton, supra, 60 Cal.2d 105, 32 Cal.Rptr. 4, 383 P.2d 412.
[36] People v. Hamilton, supra, 60 Cal.2d 105, 126, 32 Cal.Rptr. 4, 383 P.2d 412.
[37] People v. Hamilton, supra, 60 Cal.2d 105, 128, 32 Cal.Rptr. 4, 383 P.2d 412.
[38] People v. Hamilton, supra, 60 Cal.2d 105, 138, 32 Cal.Rptr. 4, 383 P.2d 412.
[39] People v. Cleveland, supra, 25 Cal.4th 466, 486, 106 Cal.Rptr.2d 313, 21 P.3d 1225.
[40] This issue is currently pending in People v. Hernandez (2002) 95 Cal.App.4th 1346, 116 Cal.Rptr.2d 379, review granted May 15, 2002 (S105271); People v. Smith (B133309), review granted June 19, 2002 (S106273); and People v. Du (B110122), review granted June 19, 2002 (S106740); and a petition for review is pending in People v. Alas (2002) 100 Cal. App.4th 293, 122 Cal.Rptr.2d 467
[41] Compare Crist v. Bretz, supra, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24; Curry v. Superior Court, supra, 2 Cal.3d 707, 712, 87 Cal.Rptr. 361, 470 P.2d 345.
[42] Penal Code section 1089; see footnote 11, ante.
[43] See People v. Collins, supra, 17 Cal.3d 687, 693-694, 131 Cal.Rptr. 782, 552 P.2d 742; People v. Burns, supra, 84 Cal.App.2d 18, 25-26, 189 P.2d 868.
[44] See People v. Burgess, supra, 206 Cal. App.3d 762, 768-769, 253 Cal.Rptr. 828; People v. Burns, supra, 84 Cal.App.2d 18, 32-33, 189 P.2d 868.
[45] See People v. Burns, supra, 84 Cal.App.2d 18, 32-33, 189 P.2d 868.
[46] See People v. Hamilton, supra, 60 Cal.2d 105, 120, 32 Cal.Rptr. 4, 383 P.2d 412; compare, People v. Burgess, supra, 206 Cal.App.3d 762, 769, 253 Cal.Rptr. 828 [applying harmless error analysis]; People v. Bums, supra, 84 Cal.App.2d 18, 32-33, 189 P.2d 868 [applying harmless error analysis].
[47] United States v. Ball (1896) 163 U.S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300["[I]t is quite clear that a defendant, who procures a judgment against him ... to be set aside, may be tried anew . . ., for the same offense of which he had been convicted. [Citations.] The court therefore rightly overruled [the] plea of former jeopardy. . . ."]; United States v. Tateo (1964) 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448 [retrial allowed after reversal based upon trial error]; People v. Superior Court (Marks) (1991) 1 Cal.4th 56, 72, 2 Cal. Rptr.2d 389, 820 P.2d 613 ["Should a defendant secure reversal on appeal, . . ., criminal proceedings are subject to reinstatement."]; People v. Murphy (1963) 59 Cal.2d 818, 833, 31 Cal.Rptr. 306, 382 P.2d 346 [unqualified reversal of conviction remands cause for new trial and places defendants in trial court in same position as if cause had never been tried]; Penal Code section 1262 ["If a judgment against the defendant is reversed, such reversal shall be deemed an order for a new trial, unless the appellate court shall otherwise direct."].
[48] United States v. Ball, supra, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 [retrial permissible following reversal of conviction on direct appeal]; United States v. Tateo, supra, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 [retrial permissible when conviction declared invalid on collateral attack].
[49] United States v. Tateo, supra, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 [permitting retrial where the trial court had improperly coerced the defendant into pleading guilty].

Burks v. United States (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 represents a significant exception to the general rule that double jeopardy does not bar retrial of a defendant who has succeeded in getting his conviction set aside because of trial error. In Burks the United States Supreme Court held double jeopardy bars retrial when a defendant's conviction is reversed on the sole ground the evidence was insufficient to sustain the jury's verdict. (Burks v. United States, supra, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1; see also, United States v. Scott (1978) 437 U.S. 82, 90-91, 98 S.Ct. 2187, 57 L.Ed.2d 65 ["The successful appeal of a judgment of conviction, on any ground other than the sufficiency of the evidence to support the verdict ... poses no bar to further prosecution on the same charge"]; compare, Lockhart v. Nelson (1988) 488 U.S. 33, 38-39, 109 S.Ct. 285, 102 L.Ed.2d 265 [permitting retrial eilthough erroneously admitted evidence supplied the substantial evidence to support the conviction].)